**FEDERAL LABOR UNION NO. 18887
Affiliated with the A.F.L.–C.I.O.**

v.

**MIDVALE–HEPPENSTALL COMPANY.**

Civ. A. No. 68–252.

United States District Court
E. D. Pennsylvania.

March 26, 1969.

Edward Davis, Philadelphia, Pa., for plaintiff.

Arthur R. Littleton, Morgan, Lewis & Bockius, Philadelphia, Pa., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

WOOD, District Judge.

Both parties have moved for summary judgment in this case in which jurisdiction is invoked under Section 301(a) of

the Labor-Management Relations Act of 1947 as well as the Arbitration Act of 1947, 9 U.S.C. §§ 1, 10. The plaintiff is a union engaged in the representation in collective bargaining of the hourly production and maintenance employees of the defendant employer.

The issues at hand arise from an opinion rendered by an Impartial Arbitrator appointed under a collective bargaining agreement between the parties, which was effective between October 1, 1965 and September 30, 1968. Articles XV and XVI of that agreement provided a scheme for the resolution of grievances. Section 1 of Article XV was a so-called "no strike" provision which provided that:

> "Should any difference arise between the Company and the Union as to the meaning and application of, or compliance with, the provisions of this Agreement or as to any questions relating to individual rates of pay, hours of work, or other working conditions of any employee or employees, there shall be no interruptions or suspensions of work, work stoppages, strikes or lockouts on account of such difference but an earnest effort shall be made to settle the matter promptly in accordance with the procedure set forth below."

The remainder of Article XV provides for a procedure of several steps to attempt to resolve a grievance between the Union and the Company. Section 1 of Article XVI then provides that if the Union and the Company are unable to resolve a grievance between themselves according to the procedure stated in Article XV, " * * * and if such grievance relates either to the interpretation, application of or compliance with the provisions of this Agreement," then such grievance may be appealed to an Impartial Arbitrator pursuant to the procedure established in Article XVI. Section 11 provided that the Arbitrator did not "have jurisdiction over changes in the negotiated wage scales for established jobs." It is further provided in Section 10 that "The decision of the Impartial Arbitrator on any matter within his jurisdiction and authority shall be final and binding upon the Company, the Union and the employees."

Grievance 67–13 was presented at a hearing before Arbitrator Lewis M. Gill on October 12, 1967. The Union there sought an increase in the pay rate for Treatment Heaters on the ground that their work was comparable to that of the higher-rated job of Forge Heaters. The claim was advanced under Article VI Section 3, which provided that:

> "The Company and the Union recognize the principle of equal pay for employees doing the same quantity and quality of work under the same or substantially the same operating conditions, provided the factors of general skill, ability, and experience of the employees are also equal, and the Company agrees to make such adjustments in the present rate or rates for job classifications to achieve the foregoing objective as may *be agreed upon by the parties.*" (Emphasis ours)

The Company denied that the jobs were comparable, but made the threshold argument that under the Agreement the Arbitrator had no authority to award an increased rate in view of the language italicized above at the end of Article VI Section 3. The Company further argued that the Arbitrator did not have authority to adjust rates between jobs as the Union urged because under Article XVI Section 9 it was provided that he did not have " * * * jurisdiction or authority to add to, or detract from, or alter in any way such provisions" of the Agreement, and under Section 11 of Article XVI it was provided that the Arbitrator would not have "jurisdiction over changes in the negotiated wage scales for established jobs."

In his Opinion the Arbitrator declined to reach the merits of the Union's claim of parity of workload between Treatment Heaters and Forge Heaters because he in effect accepted the Company's contentions that he lacked authority under the collective bargaining agreement to order equalization of wages for jobs entailing

comparable workloads under Article VI Section 3. He ruled first, that under Article VI Section 3 (quoted above) the Company had only obliged itself to make such adjustments when the parties (i. e. the Company and the Union) agreed among themselves, and that therefore the Arbitrator was not, under the contract, empowered to make such adjustments because the arbitration procedure prescribed under Article XVI was not applicable to wage adjustments for paritable workloads under Article VI Section 3. The Arbitrator further held that under the contract he did not have authority to equalize wages for similar workloads because under Section 11 of Article XVI he was denied "jurisdiction over changes in the negotiated wage scales for established jobs." He concluded that "Grievance No. 67–13 is dismissed on the ground that the Arbitrator had no jurisdiction over the issues involved, under the contract."

The Union has now initiated an action in this Court seeking an order vacating and remanding the Opinion of the Arbitrator and declaring in effect that a grievance concerning equalization of wages for comparable workloads is a proper subject for arbitration under Article XVI of the collective bargaining agreement between the parties. They first contend that the equalization of pay between Treatment Heaters and Forge Heaters is a grievance encompassed by Section 1 of Article XV which the Company agreed to submit to grievance and arbitration procedure, and that the Arbitrator in holding that he had no "jurisdiction" over this dispute was arbitrarily refusing to decide a question which the Company and the Union had by contract agreed to submit to him. In other words, the Union argues that the questions of whether the two jobs were functionally comparable and whether wages of the Treatment Heaters should accordingly be adjusted upward were questions relating to the "interpretation, application of or compliance with the provisions" of the collective bargaining agreement between the parties which Section 1 Article XVI

provided could be submitted to the arbitration procedure prescribed in Article XVI. The Union further urges us that the Arbitrator's reading of Section 11 of Article XVI (providing that he had no jurisdiction over "changes in negotiated wage scales for established jobs") to exclude authority to arbitrate the equalization of wages question was an arbitrary and capricious disregard of a grievance properly presented to him under the terms of the collective bargaining agreement. They therefore urge us, citing the decisions of the Supreme Court in the *Warrior* trilogy and their progeny, that we should vacate the Opinion of the Arbitrator and remand to him for arbitration on the merits of the equalization of pay question under Section 1 of Article XV. See United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); See also Radio Corporation of America v. Association of Professional Engineering Personnel, 291 F.2d 105 (3rd Cir. 1961); H. K. Porter Co., Inc. v. United Saw, File & Steel Prod. Workers, 333 F.2d 596 (3rd Cir. 1964).

It is somewhat ambiguous whether the claim of the plaintiff is to compel arbitration of a grievance, or to review the decision which the arbitrator has already made in interpreting the contract, Article VI Section 3 and Article XVI Section 11. We think that regardless of which way his claim is couched, the plaintiff's request for relief must be denied, and summary judgment granted in favor of the defendant.

■■ The first point of the plaintiff's assertions is that the Arbitrator should be compelled to arbitrate the Union's grievance with regard to equal pay for comparable jobs on the merits. Much is made of the Arbitrator's conclusion that he lacked "jurisdiction" to hear the Union's claim on the merits. They rely

on the language of the *Warrior* case to the effect that " * * * all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement." 363 U.S. at 581, 80 S.Ct. at 1352 and that " * * * An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." 363 U.S. at 583, 80 S.Ct. at 1353. These salutory precepts, however, will not avail the plaintiff in the instant case. The Arbitrator has already decided the question which the parties agreed by contract to submit to his decision, namely whether, as a matter of interpretation of the contract, certain employees could have their wage rates increased after showing that their workload was functionally comparable to that of other employees who enjoyed higher wage rates. The Arbitrator held, especially in his interpretation of Article VI Section 3, that the company had not in the contract agreed to make such adjustments in wage rates except on a voluntary basis. Once having arrived at this interpretation of the contract which the parties agreed was to be "final and binding", it would have been superfluous for the Arbitrator to have proceeded to determine whether in fact the two jobs were functionally comparable. It would not seem an infrequent event that the Arbitrator's interpretation of the contract obviated the necessity of his making additional factual findings, and to allow a party to elevate the absence of such findings to a "refusal to arbitrate" would be to open a back door for courts to review the interpretation of the contract by the Arbitrator. See United Engineering and Foundry Employees Association Independent Union v. United Engineering and Foundry Company, 389 F.2d 479 (3rd Cir. 1967).[1] The Arbitrator, who cannot be held to technical legal connotations of words in his opinion, used the word "jurisdiction" in disposing of the grievance, but from context it is clear that he arrived at his decision by interpreting the collective bargaining agreement. For us to compel arbitration on the facts of functional comparability would in effect be to reverse the Arbitrator's construction of the contract, and this the courts should not do. As the Supreme Court stated in the *Warrior* cases "The courts * * * have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, *or determining whether there is particular language in the written instrument which will support the claim.* * * * When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal." (Emphasis added) Steelworkers, *supra*, 363 U.S. 564, 568–569, 80 S.Ct. 1343, 1346.

The alternate point of the plaintiff's claim is that, assuming the Arbitrator did decide the question that the parties had agreed to submit to him under the contract, his interpretation was arbitrary and capricious and should be overturned by this Court. We cannot agree. As the Supreme Court has stated in the *Warrior* trilogy, the area of review of the Arbitrator's decision is narrowly circumscribed. Impartial Arbitrators are "indispensable agencies in a continuous collective bargaining process" because "they sit to settle disputes at the plant level—disputes that require for their solution knowledge of the custom and prac-

---

1. "The court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of the arbitrator." Quoted with approval from United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, at 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960).

tices of a particular factory or of a particular industry as reflected in particular agreements" so that "the federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." 363 U.S. 593, 596, 80 S.Ct. 1358, 1360. With these considerations in mind, the court prescribed a limited area of review for the federal courts:

> "Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to his obligation, courts have no choice but to refuse enforcement of the award." 363 U.S. 593, 597, 80 S.Ct. 1358.

It is further stated that "a mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority" is not sufficient to justify upsetting the award, but that it should be clear that "this arbitrator has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration." 363 U.S. 593, 598, 80 S.Ct. 1358, 1361.

In the instant case, it is apparently the plaintiff's contention that the Opinion of the Impartial Arbitrator did not "draw its essence" from the collective bargaining agreement because he did not hold that the grievance and arbitration procedure of Articles XV and XVI applied to Section 3 of Article VI. Article VI consists of three Sections. The first two Sections explicitly provide that grievances relating to their provisions may be appealed through the procedure described in Articles XV and XVI; Section 3 does not. Plaintiff argues that since there are many sections in the agreement to which the procedure in Articles XV and XVI apply without explicit provision that they apply, and since it is the "pattern" of Article VI that grievances concerning its terms may be appealed according to the procedure of Articles XV and XVI, then it is clear that the Arbitrator abused his function.

■■ We will not express our opinion on the merits of the decision which the Arbitrator reached. However, under the circumstances we cannot say that his conclusion was arbitrary and capricious, or did not derive its essence from the collective bargaining agreement between the parties. Section 3 was the only Section of Article VI which did not invoke the grievance procedure of Articles XV and XVI. Instead, it was stated that the Company agreed to make "such adjustments in the present rate or rates for job classifications to *achieve the foregoing objective as may be agreed upon by the parties*". (Emphasis ours) We cannot say that it was unreasonable for the Impartial Arbitrator to conclude, as he did, that this language "limits the Company's obligation under such adjustments as the parties *may* agree upon." Courts are not to upset the conclusions of the Arbitrator merely because they may disagree with his conclusions as a matter of legal interpretation. As the Supreme Court stated in the *Enterprise* case "the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction that was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." 363 U.S. 593, 599, 80 S.Ct. 1358, 1362.

### ORDER

And now, this 26th day of March, 1969, it is ordered that the motion of the defendant for summary judgment is granted, and the Clerk is directed to so enter it.