H. K. PORTER COMPANY, INC., Appellant,

v.

UNITED SAW, FILE AND STEEL PRODUCTS WORKERS OF AMERICA, FEDERAL LABOR UNION NO. 22254, AFL–CIO.

No. 14509.

United States Court of Appeals Third Circuit.

Argued Jan. 21, 1964.

Decided June 19, 1964.

Philip H. Strubing, Philadelphia, Pa. (Edward W. Madeira, Jr., Alfred W. Cortese, Jr., Philadelphia, Pa., on the brief), for appellant.

Louis H. Wilderman, Philadelphia, Pa. (Richard H. Markowitz, Wilderman, Markowitz & Kirschner, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and FORMAN and GANEY, Circuit Judges.

FORMAN, Circuit Judge.

H. K. Porter Company (hereafter the Company) acquired in November of 1955 substantially all the assets of Henry Disston & Sons, Inc. (hereafter Disston), who for many years maintained a steel production plant in the Tacony section of Philadelphia. The Company continued to operate this plant there until February of 1959 calling it the Henry Disston Division of the H. K. Porter Company. It then announced that it intended to move a large part of its production facilities from Philadelphia to Danville, Virginia.

Thereafter, United Saw, File and Steel Products Workers of America, Federal Labor Union No. 22254, ALF-CIO (hereafter the Union) and the Company, discussed, among other things, severance pay and pension rights of the employees. They, however, failed to agree thereon.

The Union brought an action in the United States District Court for the Eastern District of Pennsylvania[1] to compel the Company to proceed to arbitration under its collective bargaining agreement of September 15, 1957 as extended on September 15, 1958. The District Court held that the disputes concerning severance pay and pension rights of the employees were arbitrable.[2]

After hearing the dispute, the Arbitrator,[3] on August 17, 1962, among other things, ruled:

"1. Each employee who, at the time he was terminated, had completed twenty-five years of service or more, but had not reached age sixty-five shall be paid full pension.

"The formula for payment to be worked out by H. K. Porter Company and the Union.

"Each terminated employee shall receive a $1,000 non-contributory life insurance policy as provided for in Section XIX-A.

"2. Each employee who, at the time he was terminated had reached age sixty-five, but had not completed twenty-five years of service shall be paid a pro rata pension based on an equitable formula to be worked out by H. K. Porter Company and the Union.

"Each terminated employee shall receive a $1,000 non-contributory life insurance policy as provided for in Section XIX-A.

"3. The request for pensions for employees who, at their termination, had not reached age sixty-five and who had not put in twenty-five years of service is denied."

The Company filed an action in the District Court attacking the award. The

1. Under § 301, Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1958).

2. United Saw, File & Steel Prod. Wkrs. v. H. K. Porter Co., 190 F.Supp. 407 (E.D. Pa.1960); appeal followed as to the form of order and the U. S. Court of Appeals for the Third Circuit on March 24, 1961, issued its Order No. 13439, settling the terms, pursuant to which the District Court entered the following order:

"And now to wit, this 11th day of April, 1961, it is hereby ordered and decreed that the plaintiff's Motion for Summary Judgment in the above matter be, and the same is hereby Granted, and that Summary Judgment is hereby entered in favor of plaintiff, United Saw, File and Steel Products Workers of America, Federal Labor Union No. 22254, AFL–CIO, and that defendant is hereby ORDERED to conform and comply with Sections III and IV of the Collective Bargaining Agreement between itself and the plaintiff, to select an Impartial Chairman and to submit to arbitration, subject to the provisions of the Collective Bargaining Agreement, the grievances with respect to pensions and severance pay insofar as such grievances arise under the provisions of the Collective Bargaining Agreement and constitute claimed violations thereof. * * * "

3. W. Roy Buckwalter, Professor of Finance and Management, Temple University.

litigation was brought to a head by motions for summary judgment filed by both the Company and the Union. For its part the Company sought to have the award vacated on the grounds that the Arbitrator had "exceeded his authority and the scope of the submission" and that he had "added to, amended and completely disregarded the explicit and unambiguous provisions of the Agreement." The Union, on the other hand, sought, among other things, an order that the Company perform the obligations set forth in the award of the Arbitrator.

The District Court denied the motion of the Company and granted the motion of the Union, ordering enforcement of the arbitration award,[4] from which the Company has appealed on the same grounds it asserted in attacking the award.[5]

In their collective bargaining agreements of September 1, 1950, February 4, 1952 and July 15, 1953, Disston and the Union treated the subject of pensions in part as follows:

"C. ELIGIBILITY. Basic yearly pension allowance (without Social Security) which shall be paid a retired employe (sic) who has reached the age of sixty-five with at least twenty-five years of continuous service with the Company, * * *"

Provision was also made for retirement at age sixty with at least thirty years of continuous service.

After the acquisition of the Disston plant by the Company, it entered into a Memorandum of Agreement with the Union, dated September 19, 1956, as of September 1, 1956, containing, among other things, the following provisions:

"I   A joint Union-Management Committee will be established to write a finalized Agreement to be entered into between the Union and the Henry Disston Division of H. K. Porter Company, Inc. of Pittsburgh,

and shall use for such purpose the Agreement between the Union and Henry Disston & Sons, Inc. Included in the rewrite shall be the following:"

\*     \*     \*     \*     \*

"(G)  *Pensions:*

"The Company will continue the pension plan negotiated between the Union and Henry Disston and Sons, Inc., except for the following changes:

"1) Elimination of the provision of eligibility for pension at age 60 with 30 or more years of continuous service."

Approximately a year later, on September 16, 1957, the Company entered into a collective bargaining agreement with the Union containing the following provisions:

"*Section XX*—PENSIONS.

"The Company agrees to continue pensions payments as negotiated September 1, 1950, February 4, 1952 and July 15, 1953 with its predecessor Henry Disston & Sons, Inc. The Company will also provide for all employes (sic) covered by this Agreement the following Pension Plan:

"A. The administration of this Pension Plan shall be in the charge of the Management General Pension Board, Henry Disston Division, H. K. Porter Company (Delaware) Hourly Employes (sic) Pension Plan.

"B. UNION MANAGEMENT PENSION COMMITTEE. A pension committee consisting of three members from Management and three members from active Union membership shall review eligibility problems * * * Problems of eligibility within the terms of this pension plan that cannot be solved by this Pension Com-

---

4.  H. K. Porter Co. v. United Saw, File and Steel Prod. Wkrs., 217 F.Supp. 161 (E.D.Pa.1963).

5.  The demand of the Union for severance pay was rejected by the Arbitrator and that claim is not included in this appeal.

mittee shall be the only pension problems subject to arbitration, * * *

"C. ELIGIBILITY. Basic yearly pension allowance (without Social Security) which shall be paid a retired employe (sic) who has reached the age of sixty-five with at least twenty-five years of continuous service with the Company, shall depend upon two conditions:

"1. The number of years of continuous service the employe (sic) has with the Company. The length of continuous service of an employe (sic) shall be computed from the date on which he or she first began work. * * *"

* * * * * *

"2. The amount of the employe's (sic) average regular yearly earnings, * * *"

Pensioned employees were also entitled to life insurance policies under the Agreement on the following basis:

"*Section XIX*—LIFE INSURANCE.

"A. The Company will provide to all employees covered by this Agreement, including the Union President and Union Secretary, effective on the day after completing one month of continuous service with the Company, a $2500. non-contributory Life Insurance policy until retirement date; and on the First of the month following the employe's (sic) pensioned retirement, a $1000. non-contributory Life Insurance Policy while on pensioned retirement. * * *

Other provisions of the Agreement related to arbitration in part as follows:

"*Section III*—ADJUSTMENT OF GRIEVANCES

"A. Should differences arise between the Company and the Union or any of its members as to the meaning and application of the provisions of this Agreement or should any grievance arise between the parties hereto, there shall be no stoppage of work, strike or lockout on account of such differences, but an earnest and sincere effort shall be made by the parties hereto to settle such differences in the following manner:"

* * * * * *

"*Section IV*—IMPARTIAL CHAIRMAN

"A. The Impartial Chairman shall be chosen by mutual agreement between the Union and the Company. * * *

"B. The use of arbitration is confined to grievances of individuals or groups and neither the Company nor the Union agree to submit to arbitration either broad labor policies or plant-wide wage adjustments.

"C. The Impartial Chairman shall have the authority to make final decision in such cases where the Union and the Company cannot agree."

The Arbitrator ruled that he was without power to grant allowance of severance pay, absent any authority thereon in the collective bargaining agreement. To do so, he reasoned, would be to make an unauthorized addition to the agreement in violation of Section XX–B. He therefore rejected the Union's request for severance pay.

The Arbitrator, however, differentiated his interpretation of the pension clause of the agreement from severance pay on the ground that there were patterns of past practice with regard to pensions, not present in the instance of severance pay. He believed that these practices, although carried out not by the Company but by Disston, demonstrated that the Pension Board had abided by the spirit of Section XX rather than by its exact wording. Consequently, the Arbitrator held that this justified a broader interpretation than a mere literal reading of the eligibility clause which called for sixty-five years of age and twenty-five years of continuous service before the granting of a pension.

After analyzing the evidence submitted to him, the Arbitrator in fact found twenty cases between 1950 and 1955,

wherein there was deviation from a strict interpretation of the eligibility requirement. In his opinion he stated:

"* * * In numerous instances where an employee had less than 25 years of continuous service a pension was granted because 'special consideration was given because of the long period of total employment.' Instances were cited of pensions being granted where the workers (Snyder and Bamford) had not met the age requirement but had long total service (44 years and 41 years). The Personnel Director, Mr. Norton testified that breaks in service caused by the 1930 depression were generally not construed as breaks. In several instances the closing of a shop or the curtailment of the operation of a shop was a factor in influencing the decision of the Pension Board. In one instance a pension was given because of physical disability, to an employee who was only 46 years of age. This was done in spite of the fact that the labor agreement made no provision for a pension because of physical disability."

The Memorandum of Agreement of September 1, 1956 between the Company and Disston provided that the former would continue the pension plan negotiated between the Union and Disston. For this reason, the Arbitrator concluded that he should consider the pension practices of the former employer Disston.

The Company argued that it was in no wise bound by the practices prevailing under the Disston agreement. It asserted that while a plan for pensions was perpetuated by the agreement between the Company and the Union which prevailed in 1959 generally similar to the scheme followed under the Disston agreement, there was a difference in some terms and new policies were contemplated to be carried out by new personnel. The Company further submitted that the Arbitrator construed not the contract with the Company but the one with Disston. It contended also that the second part of the award of the Arbitrator which granted pensions to employees with less than twenty-five years of service is completely unsupported even by any of Disston's prior practices and must be vacated.

I

The parties conceded that the District Court properly refused to review the merits of the arbitration award.[6] To be valid, however, an arbitrator must draw the essence of the award from the collective bargaining agreement.[7] An arbitrator should not dispense his own brand of industrial justice, but must confine himself to the interpretation and application of the collective bargaining agreement.[8] He may, nevertheless, "look for guidance from many sources." [9] The Supreme Court has said:

"The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practice of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it. * * *" [10]

We disagree with the contentions of the Company that the Arbitrator in this case was precluded from considering the pension practices under the Disston agreement, for a provision of the Memorandum of Agreement of September 19, 1956 committed it to "continue the pension plan negotiated between the Union and Henry Disston and Sons, Inc. * *"

It should be remembered that the arbitration proceedings in this case arose out of the grievances of employees whose services with the Company were ter-

6. United Steelworkers, etc. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424, 1427 (1960).

7. Id. At 597, 80 S.Ct. at 1361, 4 L.Ed. 2d at 1428.

8. Ibid.

9. Ibid.

10. United Steelworkers, etc. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581- 582, 80 S.Ct. 1347, 1352-1353, 4 L.Ed. 2d 1409, 1416-1417 (1960).

minated in 1959 when the Company removed a large part of its Disston facilities from Philadelphia to Danville, Virginia. The first part of the Arbitrator's ruling went no further in prospective effect than to rule that those employees who had rendered the Company and its predecessor twenty-five years or more of service and whose jobs were terminated by reason of the removal of the plant should not suffer the loss of pensions even though such employees had not attained sixty-five years of age.

In the margin is a list of the instances examined by the Arbitrator where the length of service had influenced the Pension Board of Disston to grant pensions to employees notwithstanding the failure of strict compliance with the eligibility clause of sixty-five years of age and twenty-five years of continuous service.[11] Under the circumstances of this case these practices formed a source of guidance to which the Arbitrator was authorized to look, in interpreting the eligibility clause of the agreement. The Arbitrator acted entirely within his competence in granting the pensions based on duration of service. The District Court properly approved these findings and conclusions. Hence the Judgment of the District Court with regard to the Part I ruling of the Arbitrator will be affirmed.

## II

Examination of the record, however, has failed to reveal any support for the second part of the Arbitrator's award. There he ruled:

"2. Each employee who, at the time he was terminated had reached

11. *Abstract of Arbitrator's Analysis of Previous Practices*

| | Name of Employee | Age at Termination | Previous Years of Service | Continuous Years at Termination | Total Years of Service |
|---|---|---|---|---|---|
| 1. | James Rose * | 68 | 34 | 12 | 46 |
| 2. | Frank McKinney * | 73 | 28 | 20½ | 48½ |
| 3. | Edward Riley ** | 78 | 29 | 27½ | 56½ |
| 4. | Peter McKinney ** | 71 | 26 | 28½ | 54½ |
| 5. | George Jackson ** | 65 | 19 | 32 | 51 |
| 6. | William Robinson ** | 70 | 36 | 20½ | 56½ |
| 7. | Fred Zetkovitz *** | 70 | 16 | 31 | 37 |
| 8. | Richard Gundelswiler ** | 77 | 11 | 48 | 59 |
| 9. | Frank Snyder *** | 62 | 24 | 20 | 44 |
| 10. | Thomas Bamford *** | 58 | | 41 | 41 |
| 11. | Irving Errickson *** | 67 | 20 | 21¾ | 41¾ |
| 12. | George Southwell **** | 68 | | | 46 |
| 13. | Harry J. Mason # | 74 | 27½ | 23½ | 51 |
| 14. | William Pritchard # | 73 | | | 53½ |
| 15. | Harry Higham *** | | 28 | 9 | 37 |
| 16. | Henry Schneider *** | 68 | 21½ | 21½ | 43 |
| 17. | George Hermanowicz ## | 64 | 7 | 35½ | 42½ |
| 18. | Leonard Hutchinson ## | 64 | | 50 | 50 |
| 19. | Elmer Dutcher ## | 61 | | 47½ | 47½ |
| 20. | Robert Kessler ### | 46 | | 30 | 30 |

* Declared ineligible for pension by arbitration but granted by Pension Board.
** Granted small increase in pension on account of exceptionally long total service.
*** Awarded pension notwithstanding broken service.
**** Three and a half years of work lost during depression not considered a break in continuous service.
# Record shows special grant.
## Terminated with closing of File Division in 1954. Ineligible for Social Security until age sixty-five, granted increased pension until qualified for Social Security.
### Given a grant or pension on account of physical disability.

age sixty-five, but had not completed twenty-five years of service shall be paid a pro rata pension based on an equitable formula to be worked out by H. K. Porter Company and the Union.

"Each terminated employee shall receive a $1,000 non-contributory life insurance policy as provided for in Section XIX–A."

The Arbitrator said in his opinion:

"It is well accepted that a pension is paid primarily because of years of service and not because an employee has attained a certain age."

Assuming the accuracy of this statement, it gives support to the allowance of pensions to employees for long service (over twenty-five years continuous or total), but it defeats the conclusion that the employee should be granted a pension when he has reached the age of sixty-five regardless of his years of service.

A reference to the cases examined by the Arbitrator upon which he bases his authority to deviate from the clear and unambiguous words of the eligibility clause discloses in all twenty cases each employee rendered not less than twenty-five years of total service.[12] Indeed, the minimum was thirty years and the maximum fifty-nine years. In all instances except two where the employees were under sixty-five years, they qualified for pensions, being over sixty and having thirty years of service. In the two under sixty, one was forty-six years of age with thirty years of service, but was given either a grant or a pension on account of physical disability. The other was fifty-eight but had forty-one years of service and no reason appears for the grant to him.

That the Company was moving its plant to a new location may have invoked hardship on older employees. Yet, absent any provision either explicitly or implicitly authorizing the Arbitrator's ruling in Part 2 of his award, or any prior practice which reasonably could so interpret it, he lacked a basis for his conclusion. As already stated, the Arbitrator may not administer his own brand of industrial justice.

We find that in Part 2 of the award the Arbitrator had no ground upon which to base his interpretation of the clear and unambiguous words of the eligibility clause. Standing by itself, it gave him no room to construe it in any manner than according to its plain meaning. Bereft of any practice evidencing a relaxation of the requirement of years of total service and relying only upon age, the Arbitrator was unjustified in deviating from the plain mandate of the eligibility clause, as it concerned those who fulfilled only the portion making the age of sixty-five a requirement. Indeed, such an interpretation neither goes to the essence nor to the application of the collective bargaining agreement. The District Court erred in holding that the Arbitrator did not exceed his authority when he ruled that:

"2. Each employee who, at the time he was terminated had reached age sixty-five, but had not completed twenty-five years of service shall be paid a pro rata pension based on an equitable formula to be worked out by H. K. Porter Company and the Union.

"Each terminated employee shall receive a $1,000 non-contributory life insurance policy as provided for in Section XIX–A."

Accordingly, the judgment of the District Court to that extent will be reversed. The case will be remanded with instructions to enter judgment in favor of the Company insofar as Part 2 of the Arbitrator's award is concerned, pursuant to the views expressed herein.

12. Ibid.