566 F.2d 1196
 91 L.R.R.M. (BNA) 2583, 78 Lab.Cas. P 11,281
 MONONGAHELA POWER COMPANY, an Ohio Corporation, Appellant,
v.
LOCAL NO. 2332, INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO-CLC, and Local No. 2357
International Brotherhood of Electrical
Workers, AFL-CIO-CLC, Appellees.
 No. 75-1329.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 11, 1975.
Decided Feb. 9, 1976.
 
 Leonard L. Scheinholtz, Pittsburgh, Pa. (Martha H. Munsch, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., and Richard H. Talbott, Jr., Manager-Legal Services, Fairmont, W. Va., on brief), for appellant.
 Stanley M. Hostler, Charleston, W. Va. (Hostler, Logsdon & Shinaberry, Charleston, W. Va., on brief), for appellees.
 Before WINTER, RUSSELL and WIDENER, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This appeal is a sequel to that reported in Monongahela Pow. Co. v. Loc. No. 2332 Int. Bro. of El. Wkrs. (4th Cir. 1973), 484 F.2d 1209. As pointed out in the earlier opinion, the suit was begun to enjoin an alleged work stoppage on the part of the company's employees at its Weirton, West Virginia, power plant pending arbitration of the right of the employees to refuse to cross picket lines set up by striking employees from another plant of the company. Refused an injunction by the District Court the Company appealed to this Court. Pending that appeal, an injunction was granted by this Court against the refusal of the employees to cross the picket lines. The employees complied with the injunction. After they returned to work pursuant to the injunction, the Company, claiming authority under Section 4, Article X, of the collective bargaining agreement imposed disciplinary suspensions on all employees who had participated in the work stoppage. The suspensions of employees who were officers of the local bargaining union were twice those given the rank and file employees. The suspensions by the affected employees were not to be served consecutively but were to be staggered. The Company is a public utility charged with the responsibility of providing a necessary, uninterrupted service and it was in order to minimize the adverse impact of such suspensions on the Company's operations that the suspensions were staggered. This staggering of the service of the suspensions was extended in most cases over a period of several months.
 
 
 2
 When the opinion of this Court was handed down reversing the denial of injunctive relief to the Company and ordering arbitration, the parties engaged in arbitration. The arbitrator selected in the proceeding made his award. In it, he found (1) that the employees had "engaged in a work stoppage, or illegal strike, which conduct is prohibited by the provisions of Article X of the Collective Bargaining Agreement," (2) that "(T)he action of the company in disciplining the employees who refused to cross the picket line, * * * was reasonable, supported by the evidence, and consistent with the language of Article X, Section 4," (3) that "(T)he decision of the company to impose more severe penalties against union officers, * * * was within the contractual authority of the Company," (4) that the suspensions need not "be served during consecutive days," but because "of the critical necessity to maintain continuous service to the company's customers, it was reasonable to delay the suspension for a reasonable time, or staggered," but (5) that such suspensions must be served "within a period of 60 days" and any suspensions beyond that period "shall be deemed waived." The Company thereupon filed this suit in the District Court to set aside so much of the award as required that the suspensions be served "within sixty days" after the employee returned to work. Both the Company and the Unions moved for summary judgment. The District Court denied the Company's motion and granted the Unions' motion. It, also, provided "that the Defendant be reimbursed by the Plaintiff for the reasonable costs of defending this action" which presumably included the right to attorneys' fees. The Company has appealed. We reverse.
 
 
 3
 The collective bargaining agreement provides in Article X that, during its term, "there shall be no strike, work stoppage, slowdown, or any other interference with or impeding of work" and "(N)o employee shall participate in any such strike, work stoppage, slowdown," etc. The consequences for any employee participating in such an unauthorized action are plainly stated in Section 4 of Article X. That Section provides that "(T)he Company shall have the unqualified right to discharge or discipline any or all employees who engage in any conduct in violation of this Article." The Company contends that under this language the right to discipline, where there has been a finding of violation of the Article, rests entirely with the Company and the Arbitrator has no right to review, amend or alter, the disciplining imposed by it on the offending employees. It asserts that this follows from the express provision that the right of the Company to discipline is "unqualified," and that any construction of the Section which would empower the Arbitrator to substitute his judgment on the proper disciplining would make a nullity of that "unqualified" right and would, also, violate that provision of the agreement which declares that the arbitrator "shall have no authority to add to, detract from or alter its express terms." We agree.
 
 
 4
 The powers of an arbitrator are not unlimited. He derives his authority from and is bound by the terms of the contract from which he draws his authority;[1] and while "(H)e may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." His function is confined to the interpretation and application of the collective bargaining agreement under which he acts and, while he may give his own construction to ambiguous language,[2] he is without any authority to disregard or modify plain and unambiguous provisions.[3] This is a well-established principle of law; it is, also, specifically so provided in the agreement in this case.[4]
 
 
 5
 In Article X of this agreement the employees bound themselves not to engage in a work stoppage during the currency of the agreement. The arbitrator found, and the parties take no exception to the finding, that the employees in this case did violate this provision of the agreement. As already stated, the Article specifies that, in such an event, the Company shall have the unqualified right to discipline or discharge the offending employees. The penalty to be imposed for violation of the Article was thereby specifically reserved to the Company and was in no way committed to the discretion or decision of an arbitrator. That provision, the agreement expressly stated, was not within the power of the arbitrator to amend, alter or nullify. The arbitrator in this case accordingly had no power or authority to change or amend the penalties imposed by the Company on the offending employees on account of their violation of the obligation under Article X of the collective bargaining agreement[5] and his action in so doing was illegal and void. This conclusion accords with our decision in Textile Workers Union of America v. American Thread Co. (4th Cir. 1961), 291 F.2d 894, 899. The rule as declared in the well-reasoned opinion of Judge Boreman in that case has been followed in the decisions of other Circuits.[6]
 
 
 6
 In American Thread, the collective bargaining agreement provided that an employee might be "disciplined or discharged only for just cause" and what would constitute "just cause" was spelt out. The employee in question was found by the arbitrator to have been guilty of an offense declared by the agreement to be just cause for disciplining or discharge. The employer had discharged the employee. The arbitrator overruled the action of the employer in discharging the employee, reasoning that he was "not foreclosed from inquiring in this case whether just cause for discharge, rather than for a lesser disciplinary measure, existed." In his award, he proceeded to reduce the penalty from discharge to suspension without pay for one week. In invalidating that action, the Court said:
 
 
 7
 " * * * By Article III the company had the right to discipline or discharge employees for just cause, surely a discretionary right, and more particularly when the offense is the 'failure of an employee to properly perform his job in accordance with the Company standards,' an offense illustratively specified as 'just cause' in Article IV, Section 1. We find nothing in any section of Article IV or any other provision of the contract to show an intent to expressly contract away the rights reserved to management. The reservation of a right to either discipline or discharge for cause would be wholly ineffective and meaningless if the employer's action, pursuant to such right, is subject to review by an arbitrator on the basis of appropriateness. If the reserved right is construed to mean that the employer can take no disciplinary action in excess of a reprimand, except at its own risk and subject to severe penalties in case an arbitrator should later be of the opinion that some milder action is appropriate, the effect would be that the employer's inherent right which has not been expressly relinquished by contract is no right at all."[7]
 
 
 8
 In this case, the absolute right of the employer to fix the discipline, where a violation of Section 1 of Article X has been found, is if anything, clearer than in American Thread, Amanda Bent Bolt or United Automobile. The agreement here describes the employer's right as an "unqualified right to discharge or discipline" (Italics added). The term "unqualified," when used in a contract, is to be given its popular meaning unless the agreement clearly shows otherwise; and that popular meaning is "completely," "absolutely" and "entirely." So defined this "unqualified right" of the Company was not to be nullified or modified by any award of the arbitrator. To grant the arbitrator a right to void the "unqualified right" of the Company would be to invest him with the power, in violation of the specific provisions of the agreement itself, to alter the agreement to accord with "his own brand of industrial justice."[8] That is not the arbitrator's province.
 
 
 9
 We find nothing in Tobacco Wkrs. Int. U., Local 317 v. Lorillard Corporation (4th Cir. 1971), 448 F.2d 949, Lynchburg Foundry Company v. United Steelworkers of America, Local 2556 (4th Cir. 1968), 404 F.2d 259, or Timken Company v. United Steelworkers of America (6th Cir. 1974), 492 F.2d 1178, at variance with the conclusion reached by us. Neither in Lynchburg Foundry nor in Lorillard Corporation was there any provision in the collective bargaining agreement vesting the "unqualified right" to discipline or discharge in the employer; and this distinction was clearly recognized and pointed out by the Court in Timken.[9] In fact, in Timken, the court stated unequivocally that the absence of such a provision clearly distinguished that case "from (the) decision in Local 342, United Automobile, Aerospace, and Agricultural Workers v. T.R.W., 402 F.2d 727, 731 (6th Cir. 1968), cert. den. 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1968), and from the decision of the Fourth Circuit in Textile Workers Union v. American Thread Co., 291 F.2d 894, 899 (4th Cir. 1961)."
 
 
 10
 Since we are of opinion the District Court erred in sustaining the motion of the defendants for summary judgment and in denying the motion of the plaintiff for summary judgment, it is unnecessary to consider the right of the defendants to recover attorneys' fees, though the defendants concede that, even had they prevailed on appeal, they would not have been entitled to attorneys' fees under Alyeska Pipeline Service Co. v. Wilderness Society (1975), 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141.
 
 
 11
 The judgment of the District Court is accordingly reversed with directions to the District Court to enter judgment in favor of the plaintiff.
 
 
 12
 REVERSED.
 
 
 
 [1]
 Steelworkers v. Enterprise Corporation (1960), 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424. See, also Butler Products Company v. Unistrut Corporation (7th Cir. 1966), 367 F.2d 733, 735
 
 
 [2]
 See Local Number 358, Bakery & Confectionery Workers Union v. Nolde Brothers, Incorporated (4th Cir. 1975), 530 F.2d 548, p. 552:
 " * * * An exception to the rule is where a clause in a labor contract purporting to exclude some matters from arbitration is vague and ambiguous. In such a case an arbitrator may be expressly empowered to not only adjudge grievances but also to decide whether the instrument gives him the power to do so."
 
 
 [3]
 Local Number 358, Bakery & Confectionery Workers Union v. Nolde Brothers, supra; City Electric Inc. v. Local U. 77, Int. Bro. of Elect. Wkrs. (9th Cir. 1975), 517 F.2d 616, 619
 
 
 [4]
 "* * * The decision of the arbitrator shall be final and binding on both parties; provided, however, that the arbitrator shall have authority only to interpret and apply the express provisions of this Agreement and shall have no authority to add to, detract from or alter its express terms. * * *." Article IX, Section 2, of the Collective Bargaining Agreement
 
 
 [5]
 In a way, the arbitrator recognized this, for, when the defendant complained of the disparate treatment accorded local officials and rank and file members, he dismissed the complaint, not because he found it proper, but because it was "within the contractual authority of the Company." (Italics added)
 
 
 [6]
 Local 342, United Automobile, A. & A. I. Wkrs. v. T.R.W., Inc. (6th Cir. 1968), 402 F.2d 727, 731, cert. denied, 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223; Amanda Bent Bolt Co. v. International U., U.A.A.A.I.W. (6th Cir. 1971), 451 F.2d 1277, 1280; City Electric, Inc. v. Local Union 77, International Brotherhood of Electrical Workers, supra (517 F.2d at 619)
 
 
 [7]
 Other cases are to the same effect. In Local 342, United Automobile, A. & A. I. wkrs. v. T.R.W., Inc., supra, for instance, the arbitrator had found that the employees in question had violated the no-strike provision of their collective bargaining agreement with their employer, which provided in that event the employer had "the right to take disciplinary action, including discharge, against any employee" violating that provision. Acting under that authorization, the employer had discharged the offending employees. The arbitrator, however, found the penalty too onerous and ordered the employees reinstated. The District Court ordered the award of the arbitrator enforced
 "We consider that the company's contract with the union, of which all of the individuals were members, gave it a clear right to do what it did. The language of this contract was not ambiguous, nor did any of its terms require interpretation by the arbitrator of the courts."
 To the same effect is Amanda Bent Bolt Co. v. International U., U.A., A., A.I.W., supra, where the Court bluntly declared (p. 1280):
 "The no-strike clause was an important part of the collective bargaining contract. Where twenty-eight employees violated this provision, they were subject to discharge. The determination of the penalty was reserved to the company and was not the prerogative of the arbitrator."
 
 
 [8]
 Steelworkers v. Enterprise Corp., supra, 363 U.S. at 597, 80 S.Ct. at 1361
 
 
 [9]
 See, also, International Ass'n of Mach., Dist. No. 8 v. Campbell Soup Co. (7th Cir. 1969), 406 F.2d 1223, 1226, cert. denied, 396 U.S. 820, 90 S.Ct. 57, 24 L.Ed.2d 70, where the Court distinguished the case under review from American Thread because there was no specific prohibition against the exercise by the arbitrator of the right to amend or alter the agreement