**UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, LOCAL 1139, Appellant,**

**v.**

**LITTON MICROWAVE COOKING PRODUCTS, LITTON SYSTEMS, INC., Appellee.**

No. 81–2230.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1982.

Decided April 6, 1983.
Rehearing and Rehearing En Banc Granted May 11, 1983.

Robert D. Metcalf, Michael C. Hickey, Metcalf, Lazarus & Hickey, Minneapolis, Minn., for appellant.

Faegre & Benson, Reid Carron, Minneapolis, Minn., for appellee.

Before ROSS, ARNOLD, and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The United Electrical, Radio and Machine Workers of America, Local 1139 (the Union) appeals from portions of a district court[1] judgment which denies the enforcement of part of an arbitration award in favor of the Union and adverse to Litton Microwave Cooking Products, Litton Systems, Inc. (Litton), and which also denies the Union an award of attorney fees. We affirm the judgment of the district court.

Litton and the Union are parties to a collective bargaining agreement (CBA) effective from October 1, 1979, to October 31, 1982. On November 24, 1980, Litton posted a notice to inform all bargaining unit employees that both of Litton's Minneapolis plants would be closed for inventory from March 23 through March 27, 1981, and that those employees who did not assist with inventory would be required to use vacation time during that week. Later that same day, the Union filed a grievance, claiming that the company violated section 11E of

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

the CBA and any other applicable sections by scheduling a vacation shutdown outside of the vacation season.

After exhausting the grievance procedure, the parties submitted the dispute to an arbitrator. The arbitrator sustained the grievance and directed that:

1. All workers who were required to take their vacations in the month of March, 1981, shall be granted a second vacation during the summer months of 1981.

2. The second vacation shall be a paid vacation.

The Union commenced an action in the United States District Court for the District of Minnesota to enforce the arbitrator's award. The Union moved for preliminary injunctive relief, and both parties cross-moved for summary judgment. The district court granted the Union's motion for injunction in part, ordering that Litton comply with the first part of the arbitrator's award that directed all workers who were required to take their vacations in March, 1981 be granted a second vacation. The district court refused, however, to order compliance with the second part of the arbitrator's award directing the vacation to be with pay. Subsequently, in a Memorandum and Order dated October 6, 1981, the district court held that the second part of the arbitrator's award could not be enforced because it was based on an erroneous factual assumption and because it was punitive,

not compensatory. The district court also denied the Union an award of attorney fees. This appeal followed.

## I. The Arbitrator's Award

■ In reviewing an arbitration award, a court does not reexamine the merits of the respective parties' claims, but gives deference to the arbitrator's decision so long as it "draws its essence" from the collective bargaining agreement. *See, e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596–97, 80 S.Ct. 1358, 1360–61, 4 L.Ed.2d 1424 (1960); *In re Arbitration between Grahams Service Inc. v. Teamsters Local 975,* 700 F.2d 420 at 422 (8th Cir.1982); *United Food & Commercial Workers, Local No. 222 v. Iowa Beef Processors, Inc.,* 683 F.2d 283, 285 (8th Cir.1982). Judicial deference to arbitration, however, does not grant carte blanche approval to any decision that an arbitrator might make. *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1,* 611 F.2d 580, 583 (5th Cir.1980). A court may vacate a labor arbitration award if the arbitrator makes a central factual assumption that is unsupported by the record, grants a punitive award in the absence of any provision for punitive awards and of any substantiating proof of willful or wanton conduct, or contravenes a limitation contained in the collective bargaining agreement.[2] *See Bal-*

---

**2.** A labor arbitration award may also be vacated if the arbitrator exceeds the scope of the arbitration submission, or is guilty of misconduct so as to deprive the parties of a fair hearing. *See Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594, 599 (3d Cir.) (cited with approval in *In re Arbitration between Grahams Serv. Inc. v. Teamsters Local 975,* 700 F.2d 420 at 422–23 (8th Cir.1982)), *cert. denied,* 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968); *Kansas City Luggage & Novelty Workers Union, Local No. 66 v. Neevel Luggage Mfg. Co.,* 325 F.2d 992, 994 (8th Cir.1964).

An alternate set of grounds for vacating an arbitration award is contained in the United States Arbitration Act, 9 U.S.C. § 10 (1976). A split has developed among the courts of appeals as to whether the United States Arbitration Act applies to suits involving the arbitration of collective bargaining agreements. At

least four circuits, the First, Second, Sixth, and Seventh, have recognized the Act's applicability. *See Electronics Corp. of Am. v. International Union of Elec., Radio & Mach. Workers, Local 272,* 492 F.2d at 1258; *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516,* 500 F.2d 921, 923 (2d Cir.1974); *Chattanooga Mailers Union, Local No. 92 v. Chattanooga News-Free Press Co.,* 524 F.2d 1305, 1315 (6th Cir.1975); *Pietro Scalzitti Co. v. International Union of Operating Eng'rs, Local No. 150,* 351 F.2d 576, 579–80 (7th Cir.1965). The Fourth Circuit has taken the opposite position. *See Sine v. Local No. 992 Int'l Bhd. of Teamsters,* 644 F.2d 997, 1002 (4th Cir.), *cert. denied,* 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981). The Third Circuit seems to have developed a conflict on the issue. *Compare Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d at 596 & n. 2, 598–99 (recognizing applicability) *with Ludwig Honold Mfg. Co. v. Fletch-*

timore Regional Joint Board v. Webster Clothes, Inc., 596 F.2d 95, 98 (4th Cir.1979) (per curiam); Electronics Corp. of America v. International Union of Electrical, Radio & Machine Workers, Local 272, 492 F.2d 1255, 1257 (1st Cir.1974); Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co., 330 F.2d 562, 565–66 (8th Cir.1964).

All three of the foregoing grounds are implicated in the present case. The first two grounds served as the basis for the district court's decision; the third is raised on appeal. We affirm on all three grounds.

## A. ARBITRATOR'S UNSUPPORTED FACTUAL ASSUMPTION

The district court summarized its first ground for vacating the award as follows:

In ordering the week of vacation with pay, the arbitrator asserted that "[m]erely granting an unpaid week off results in a net annual loss in wages." His reasoning is as follows:

Only a full week of paid vacation for each of the employees affected meets the test of a "make whole" remedy. Merely granting an unpaid week off results in a net annual loss in wages. Assuming a 52 week of payroll periods the granting of an unpaid week of time off for a summertime vacation computes to 50 weeks of paid employment, plus one week of paid vacation, for a *51 week payroll year.*

The contractual obligation under the same set of assumptions, however, is designed to produce the following annual compensation: 51 weeks of paid employment plus one week of paid vacation, for a a [sic] *52 week payroll year.* Thus, to merely grant an unpaid week off for a summer vacation equates to imposing on the grievants what virtually amounts to a lay-off. No recognized principle of equity permits such a penalty on the prevailing party in a contractual dispute.

(emphasis in original).

After reviewing the affidavits and deposition filed herein, the Court concludes that the arbitrator's factual assumption regarding a 52-week pay-period year is clearly without support. Plaintiff admits in its brief that prior to the March 1981 inventory shutdown, the practice was that employees who *neither worked nor* used vacation during inventory shutdowns were not paid for the period involved in the shutdown. In his deposition, Rocco MeMaio [sic], Local 1139's Financial Secretary, testified that, from 1975 through 1977 employees who did not work during inventory shutdowns did not receive pay for the period. He also stated that during the 1978, 1979, and 1980 inventory shutdowns plaintiff and defendant had agreed that employees who did not work could have the option of either taking the time off without pay or using accrued vacation. Moreover, under sections 3A, 6E, and 6C of the agreement defendant has the right to lay off employees.

Clearly, lay-offs are not prohibited by the contract. The exact timing of the inventory shutdown, only, is controlled. Additionally, employees are not guaranteed a 52-week pay period year. Those employees who *neither work nor use paid vacation time* during inventory shutdown in fact have a 51-week pay-period year. Thus, the granting of a week of paid vacation results in a windfall to those *who neither worked nor used vacation time* during the March 1981 inventory shutdown.

■ Although a mere error in the determination of factual issues is not sufficient to disturb an arbitrator's award, *NF & M Corp. v. United Steelworkers of America,* 524 F.2d 756, 759 (3d Cir.1975), if the arbitrator assumes the existence of a fact that is central to the award, and an examination

er, 405 F.2d 1123, 1127 & n. 18 (3d Cir.1969) (denying applicability). The Fifth Circuit has expressly reserved judgment. *See General Warehousemen & Helpers Local 767 v. Standard Brands, Inc.,* 579 F.2d 1282, 1294 n. 9 (5th

Cir.1978) (en banc), *cert. dismissed,* 441 U.S. 957, 99 S.Ct. 2420, 60 L.Ed.2d 1075 (1979). The Eighth Circuit has not squarely decided the issue.

of the record reveals no support whatever for the arbitrator's assumption, an award cannot stand. *See Electronics Corp. of America v. International Union of Electrical, Radio & Machine Workers, Local 272,* 492 F.2d at 1257; *cf. Detroit Coil Co. v. International Association of Machinists & Aerospace Workers, Lodge # 82,* 594 F.2d 575, 580–81 (6th Cir.) (award cannot stand when arbitrator's factual determinations unsupported by record), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979); *H.K. Porter Co. v. United Saw, File & Steel Products Workers of America, Federal Labor Union No. 22254,* 333 F.2d 596, 601–02 (3d Cir.1964) (same). These principles of labor arbitration are in accord with long-established equitable doctrine with respect to arbitration of disputes generally. *See Burchell v. Marsh,* 58 U.S. (17 How.) 344, 349–50, 15 L.Ed. 96 (1854) (gross mistake, not mere error of judgment, required for court to intervene).

■ At issue here is the arbitrator's factual assumption concerning a fifty-two week pay-period year. After carefully examining the record, we agree with the district court that the arbitrator's assumption is clearly without support. Moreover, we believe that the assumption is so central to the arbitrator's decision that but for the erroneous assumption a different result would have been reached. Under these circumstances, we conclude that the award cannot stand.

The Union contends, however, that the district court misinterpreted the arbitrator as stating an erroneous factual assumption, when he was "merely stating a hypothetical assumption to serve as an example." In view of the context in which the assumption appears, and the obvious connection with the decision rendered, the Union's contention must fail.

■ The Union also contends that the district court improperly considered evidence beyond the award itself and the collective bargaining agreement. We disagree. Although an arbitrator is not required to make formalized findings or to offer reasons for his decisions, when he does

so, a court may properly consider them. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361; *American Postal Workers Union v. United States Postal Service,* 682 F.2d 1280, 1285 (9th Cir.1982). A court may also consider other evidence extrinsic to the award that will assist it in determining whether the award draws its essence from the collective bargaining agreement. *See Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co.,* 330 F.2d at 566 (outside testimony); *Electronics Corp. of America v. International Union of Electrical, Radio & Machine Workers, Local 272,* 492 F.2d at 1256 (underlying facts). We cannot say that the district court erred in considering the arbitrator's opinion or the post-arbitration deposition and affidavits.

## B. PUNITIVE NATURE OF AWARD

The district court summarized its second ground for vacating the award as follows:

In *Westinghouse Electric Corporation, Aerospace Division v. International Brotherhood of Electrical Workers,* 561 F.2d 521 (4th Cir.1977), the Court stated that "[w]ith respect to vacation shutdowns, compensatory damages may be awarded only when a breach of the bargaining agreement causes a monetary loss." *Id.* at 523. In the absence of willful or wanton conduct, punitive damages should not be awarded. *Id.*

None of these employees suffered any monetary loss. Each received the exact number of paid vacation days provided for by the agreement, without losing any days of work to which they were entitled. Regarding the alleged non-monetary losses of the employees, plaintiff has failed to convince the Court that such losses have not been remedied by the additional week off provided.

Although plaintiff argues that defendant's action were [sic] not justified, there was no finding that defendant acted willfully or wantonly, nor did plaintiff present such proof. It is clear that the award of a week's pay cannot be justified as punitive damages. In the absence of

any provision for punitive awards, and of any substantiating proof of willful or wanton conduct, an arbitrator may not make an award of punitive damages for breach of a collective bargaining agreement. *Baltimore Regional Joint Board v. Webster Clothes, Inc.*, 596 F.2d 95, 98 (4th Cir.1979). . . . Though nominally compensatory, the award of a week's pay here was actually punitive. Because no provision of the contract allowed for this punishment that part of his award cannot be enforced. [Citation omitted.]

We concur in the district court's analysis. This case is very similar factually to *Westinghouse Electric Corp., Aerospace Division v. International Brotherhood of Electrical Workers, Local Union No. 1805*, 561 F.2d 521 (4th Cir.1977), *cert. denied*, 434 U.S. 1036, 98 S.Ct. 771, 54 L.Ed.2d 783 (1978), one of the cases relied on by the district court. In *Westinghouse* the Fourth Circuit affirmed the arbitrator's finding that the employer had violated the collective bargaining agreement by allowing insufficient time for negotiations with the Union; however, it vacated that portion of the arbitrator's award that ordered three additional days of paid vacation to employees who took their vacation during a vacation shutdown. The court reasoned that such an award was not compensatory, but punitive:

> With respect to the employees who took their vacation during the shutdown, the arbitrator ruled:
>
>> Employees who have reserved three days of vacation for this particular period should be granted three additional days of paid vacation in 1976.
>
> It is clear, however, that none of these employees suffered any monetary loss. Each received the exact number of paid vacation days to which he was entitled without losing any days of work.
>
> . . . .

Though nominally compensatory, the award was actually punitive. Because no provision of the contract warranted this punishment, the arbitrator exceeded his jurisdiction.

*Westinghouse Electric Corp., Aerospace Division v. International Brotherhood of Electrical Workers, Local Union No. 1805*, 561 F.2d at 523–24.

■ As in *Westinghouse*, the affected employees here did not sustain any monetary loss as a result of the inventory shutdown. Each employee was paid the exact number of vacation days to which each was entitled under the collective bargaining agreement; the inventory shutdown affected only the timing of the payment. As the district court concluded, to award an extra week's *paid* vacation under these circumstances would be a punitive award, unauthorized by the agreement.

The Union tries to distinguish *Westinghouse* from this case by arguing that the employees here were "forced" to take their vacation during the inventory shutdown. There is no evidence in the record, however, that the affected employees suffered any harm as a result of Litton's actions.[3] Each employee who chose not to work during the inventory shutdown, and thus used paid vacation time, did so voluntarily. Counsel for the Union conceded as much at oral arguments, although grudgingly. The arbitrator himself noted that "[m]ost of [the employees] who had volunteered to assist in the inventory returned to scratch their names from the sign-up sheet." If the affected employees had left their names on this sheet and had worked during the shutdown, they would not have used paid vacation during the shutdown and would have been able to preserve vacation time for later in the year. Litton assigned additional employees to work during the shutdown because an insufficient number volun-

---

**3.** The arbitrator's conclusion to that effect appears to be nothing more than speculation and alliterative fancy:

> I cannot credit the Company's argument that no employee has been harmed in this matter. Surely any worker who made plans and looked forward to a summer vacation

> with loved ones is substantially harmed by being constrained to take his/her vacation in the melancholy month of March in Minnesota.

Our examination of the record reveals no support for this conclusion.

teered. Thus, the Union cannot validly claim that employees were "forced" to use vacation during the inventory shutdown.

## C. VIOLATION OF EXPRESS CONTRACTUAL PROVISIONS

Although not discussed in the district court's Memorandum and Order, we believe there is a further, even more fundamental, reason for vacating the arbitrator's award, namely, the violation of express provisions in the collective bargaining agreement.

Section 11A of the collective bargaining agreement sets forth the specific amounts of paid vacation that employees are entitled to receive:

11A. Annual vacations with pay, subject to the provisions of this SECTION, will be granted to employees in accordance with the following schedule:

| | |
|---|---|
| Employees with one year of service | 5 days |
| Employees with two years of service | 10 days |
| Employees with five years of service | 12 days |
| Employees with eight years of service | 15 days |
| Employees with fifteen years of service | 20 days |
| Employees with twenty-five years of service | 25 days |

Section 21C of the collective bargaining agreement directs that "[t]he arbitrator's decision shall be within the terms of this Agreement" and that "[h]e shall not add to, subtract from, alter, or change the terms."

Despite these express provisions, the arbitrator ordered that the compensatory vacation time be with pay, reasoning that: "[T]o merely grant an unpaid week off for a summer vacation equates to imposing on the grievants what virtually amounts to a lay-off. No recognized principle of equity permits such a penalty on the prevailing party in a contractual dispute." However, an arbitrator does not sit to dispense his own brand of industrial justice; he sits to apply the agreement between the parties. By ordering that the compensatory time off be with pay, the arbitrator bestowed an unauthorized windfall to those employees who voluntarily chose not to work during the inventory shutdown which those employees who did work did not receive.

The Union contends that this court should not give effect to section 21C in light of this court's decision in *Western Iowa Pork Co. v. National Brotherhood Packinghouse & Dairy Workers, Local No. 52*, 366 F.2d 275 (8th Cir.1966), which construed a similar provision. In *Western Iowa Pork* this court observed that such language was another way of articulating the principle enunciated in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361, that an arbitrator is "confined to interpretation and application of the collective bargaining agreement." The court held that the provision did not clearly take the dispute or the award outside of the specifically granted authority of the arbitrator.

The issue presented here, however, is far different from that presented in *Western Iowa Pork*. Here the court is dealing not with a question of ambiguous terms in a collective bargaining agreement, but with a remedial award that violates explicit contractual provisions. If the parties meant anything when they drafted sections 11A and 21C, and if it is true that an award is legitimate only so long as it draws its essence from the collective bargaining agreement, the monetary portion of the arbitrator's award cannot stand. We reject the Union's contention that section 21C is a mere boilerplate provision.

Relying on *Carpenters' District Council of Greater St. Louis v. Anderson*, 619 F.2d 776 (8th Cir.1980), the Union further contends that a "stipulation" by the parties gave the arbitrator express authority to fashion the remedy he did, even if it could be found that the arbitrator exceeded his authority under the contract. Here, however, there was no "separate stipulation" to settle a lawsuit, as there was in *Carpenters'*. What the Union attempts to characterize as a "stipulation" is a request that Litton made to the arbitrator that he state the remedy if he found a violation. We do not read this request to be a waiver of express limitations in the collective bargaining agreement.

The Union further contends that, given the latitude afforded arbitrators in fashioning remedies in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361, the arbitrator here, having found a breach of the collective bargaining agreement, had the implied authority to, and did, fashion an appropriate remedy to compensate Litton's employees. Although an arbitrator has considerable latitude, his powers are not unlimited in the resolution of labor disputes. The arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous language, he is without authority to disregard or modify plain and unambiguous provisions of the agreement. *See, e.g., Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co.*, 330 F.2d at 564–65; *Monongahela Power Co. v. Local No. 2332, International Brotherhood of Electrical Workers*, 566 F.2d 1196, 1198–99 (4th Cir.1976); *Textile Workers Union of America, Local Union No. 1386 v. American Thread Co.*, 291 F.2d 894, 899 (4th Cir.1961).

We have considered the Union's remaining contentions and find them to be without merit.

## II. The Union's Claim for Attorney Fees

█ The Union contends that the district court improperly denied its application for attorney fees that were incurred in this litigation. Since there is no statutory authorization for awarding attorney fees, and since we find no exceptional circumstances such as bad faith, we cannot say the district court abused its discretion in denying the Union an award of attorney fees. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 258–59, 95 S.Ct. 1612, 1616, 1622, 44 L.Ed.2d 141 (1975); *General Drivers, Local No. 120 v. Sears, Roebuck & Co.*, 535 F.2d 1072, 1077 (8th Cir.1976); *Richardson v. Communications Workers of America*, 530 F.2d 126, 132 (8th Cir.), *cert. denied*, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976).

The judgment of the district court is affirmed.

ARNOLD, ˙Circuit Judge, concurring in part and dissenting in part.

I agree that there was no abuse of discretion in denying the Union's motion for attorneys' fees. As to Part I of the Court's opinion, however, I respectfully dissent.

On November 24, 1980, Litton notified its employees that there would be an inventory shutdown during one week in March and that all employees who did not work then would have to take that week as paid vacation. Litton had, in the past, closed during the summer months and had not forced employees to take paid vacation during the inventory shutdown. That same day the union filed a grievance claiming that Litton was acting in violation of the collective-bargaining agreement. The parties did not resolve their dispute. From March 23 to March 27 the company closed to take inventory and assigned work to all employees who had volunteered to assist with inventory and to approximately 180 other bargaining-unit employees. There was no work for 101 employees, and they were forced to take their paid vacation in March. Pursuant to Section 21 of the Collective Bargaining Agreement (Designated Record p. 64–66) the parties submitted their dispute for arbitration.

A hearing was held on May 1, 1981, and a decision was rendered on June 15, 1981. The arbitrator looked to the terms of the contract. Section 11E provides:

11E. The Company will schedule employees' vacations so far as is consistent with good plant operations to satisfy the desires of the employees. The Company has the option of closing the plant or putting it on a limited production schedule during the vacation season. The Company will grant leaves of absence to a limited number of employees during a vacation shutdown, so that such employees may schedule vacations during other weeks of the year, provided that the requirements of the business and the need to meet production schedules will outweigh the scheduling of vacations to be

taken other than during the vacation shutdown.

Section 11G states in part:

> 11G. The Company may require all employees ... to take their vacations during the plant shutdown or during a period defined as the vacation season if the Company provides a minimum of four (4) months prior notice of the proposed shutdown.

The arbitrator construed Section 11G as providing Litton no right to require that employees take vacation at a time not within the "vacation season." The "vacation season" included the summer months and not March. (D.R. 19). By forcing some employees to take their vacations during an inventory shutdown in March, Litton violated the terms of the contract. This holding is not in dispute.

In order to remedy the breach of contract, the arbitrator decided (1) that employees who had to take paid vacation in March were entitled to a second vacation during the summer months, and (2) that the second vacation should be a paid vacation. In his opinion the employees suffered a real loss compensable in money when they were forced to take paid vacation in March. He specifically found the following:

> Finally, I cannot credit the Company's argument that no employee has been harmed in this matter. Surely any worker who made plans and looked forward to a summer vacation with loved ones is substantially harmed by being constrained to take his/her vacation in the melancholy month of March in Minnesota. The high probability is that rather than the vacation being a shared experience the typical grievant spent much of this time in March alone, as family and friends were scheduled to work or attend school.

(D.R. 22).

I am not sure I should have awarded this particular kind of relief, or indeed that the arbitrator was correct in interpreting the contract. But those questions are, in all but the clearest cases, the arbitrator's business, not ours. Moreover, we are admonished to be particularly deferential when reviewing an arbitrator's remedy.

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). It is difficult for judges to say what harm, if any, the employees in this case suffered. Courts simply do not have the expertise that labor arbitrators have to resolve disputes between labor and management and determine an appropriate award.

> The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment .... The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination. of a grievance, because he cannot be similarly informed.

*United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). In view of the Supreme Court's clear command that we defer to an arbitrator's judgment, and especially to his remedy, I would enforce the arbitrator's award in its entirety.

The Court gives three reasons for setting aside the arbitrator's award: (1) The arbitrator, incorrectly assuming that Litton could not lay off employees, improperly awarded paid vacation as compensation for being laid off in March; (2) the remedy constitutes an unwarranted award of punitive damages; and (3) the award contravenes a limitation contained in the collective-bargaining agreement.

I do not agree that the arbitrator's opinion shows that he misapprehended facts central to his decision to award paid vacation. He did proceed on the working hypothesis that a normal work year includes 51 weeks of paid work and one week of paid vacation, and he pointed out that the 101 employees involved here would receive 50 weeks of paid work, plus one week of paid vacation, plus one week of unpaid vacation, unless the company were ordered to pay for the second vacation week. He also compared the absence of pay for the second week of vacation to a lay-off. I do not read this passage in the opinion as holding that the company had no right under the contract to lay off employees. This case has nothing to do with lay-offs as such. If, for example, the company had paid employees for 51 weeks and then given them an unpaid vacation for the 52nd week, the unpaid 52nd week would have been analogous to a lay-off, but it would also be a breach of contract. The arbitrator was saying no more than that. He simply assumed, correctly, that lay-offs are not at issue here. Everyone now seems to agree that no lay-offs occurred at the relevant time. During inventory week in March, everyone either worked or had to take paid vacation. No one was laid off.[1]

Nor does the award of a paid vacation constitute punitive damages. The arbitrator clearly believed that the employees, by having to take their vacations in March, suffered compensable harm. An award of paid vacation during the summer remedied this harm and insured that their "summer vacation" not be a mere lay-off.

Finally, in my view, the arbitrator did not exceed his authority by granting the employees a paid summer vacation in addition to the number of paid vacation days the employees would normally have under the contract. The agreement sets out the number of vacation days a worker should nor-

mally receive, but it does not limit the arbitrator's authority to fashion a remedy where, as in this case, there has been a breach of contract. A collective-bargaining agreement cannot explicitly regulate all aspects of labor-management relations, and it is the arbitrator's duty to fill in gaps. *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 580–81, 80 S.Ct. at 1352. The contract may not specify the relief that is required for every conceivable contractual violation, but absent express limitations, and as long as the remedy is not clearly unfair, courts should enforce the arbitrator's award. See *General Telephone Co. v. Communications Workers of America,* 648 F.2d 452, 457 (6th Cir.1981); *Carpenters' District Council of Greater St. Louis v. Anderson,* 619 F.2d 776, 778 (8th Cir.1980); *Fabricut, Inc. v. Tulsa General Drivers, Warehousemen, and Helpers, Local 523,* 597 F.2d 227, 229 (10th Cir. 1979); *Local 369, Bakery & Confectionery Workers International Union of America v. Cotton Baking Co.,* 514 F.2d 1235, 1237 (5th Cir.1975), *cert. denied,* 423 U.S. 1055, 96 S.Ct. 786, 46 L.Ed.2d 644 (1976).

It is true that the arbitrator's award gives the employees 50 paid weeks of work and two paid weeks of vacation, more than they would have received had the contract not been broken. This Court gives the workers 50 paid weeks of work, one paid week of vacation, and one unpaid week of vacation, for a total yearly pay less than they would have received had the contract not been broken. They get just as much vacation as the contract provides for, but they are deprived of their right to take their vacation during the preferred time of year, a right guaranteed by the contract as construed by the arbitrator. This right is surely worth something. The arbitrator did not think it was trivial, and I believe he was within his rights in so deciding. If there is a doubt as to remedy, it is not unfair to

---

1. Even if the arbitrator's discussion is ambiguous and could be read as suggesting that Litton could not have laid off employees, we would still have to uphold the award. "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator

may have exceeded his authority, is not a reason for refusing to enforce the award." *United Steelworkers of America v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 598, 80 S.Ct. at 1361.

resolve the doubt against the party that has broken its contract.

I would enforce the award in full, and therefore I respectfully dissent in part.