**ELECTRONICS CORPORATION OF AMERICA, Plaintiff-Appellee,**

v.

**INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO LOCAL 272, Defendant-Appellant.**

Nos. 73–1322, 73–1347.

United States Court of Appeals, First Circuit.

Heard Jan. 9, 1974.

Decided Feb. 21, 1974.

Will J. Bangs, Boston, Mass., with whom Choate, Hall & Stewart, Boston, Mass., was on brief, for Electronics Corp. of America.

John McMahon, Boston, Mass., with whom Angoff, Goldman, Manning, Pyle & Wanger, Boston, Mass., was on brief, for International Union of Electrical, Radio and Machine Workers, Local 272.

Before COFFIN, Chief Judge, Mc-ENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This appeal is from a summary judgment granted defendant union in a suit brought by management to vacate an arbitrator's award culminating an employee discharge grievance proceeding.[1] The asserted cause for discharge was a long period, spanning several years, of falsifying time tickets. Although a three day suspension accompanied a third warning given the employee, three months before his discharge, the arbitrator based his award on an alleged lack of industrial due process, since he assumed that the employee was not suspended prior to discharge and the employee had therefore been deprived of a significant step in a graduated, progressive warning system. He ordered the reinstatement of the employee. The district court deemed the factual error underlying the arbitrator's award to be less one of decision than of explanation, construing the arbitrator, if he had indeed been aware of the suspension, as finding that the last three months of employment, following the third warning, began a "new round" of violations which required a suspension in that period. Thus, the question before us is: where the central fact underlying an arbitrator's decision is concededly erroneous, can the award stand?

The record before us shows that the documentary evidence before the arbitrator was a long and detailed letter of discharge, summarizing four years of company unhappiness with the employee's cavalier attitude toward time tickets, meetings, oral warnings, and the three written warnings (but omitting mention of the suspension), together with tables and charts showing the extent of the employee's delinquencies. One of the charts visually displayed to but not left with the arbitrator, for March, 1972, showed three days marked with a big "A"—which a legend identified as meaning an absence—and a faded (S)—for which there was no legend. This notation, we are informed, meant "suspension". The warnings themselves were not introduced into evidence; the third would have indicated the imposition of a suspension. The testimony was not recorded. All we have in addition are affidavits from a company official attesting that in his opening remarks to the arbitrator, in testimony explaining the company's warning system, and in an ex parte discussion requested by the arbitrator, he referred to the fact of suspension. Opposing affidavits claimed that at no time during the hearing did the official refer to suspension.[2]

Three weeks after the arbitration hearing the arbitrator's decision and award were issued. The arbitrator, conceding that the employee had been "incredibly lax", saw a failure of industrial due process. Not having seen the warnings, he queried whether the warnings had given clear and unequivocal notice. He recognized that after the written warnings (given on December 6, 1971, December 21, 1971, and February 8, 1972) a discussion of the warnings at a meeting on April 6, 1972 was "a further step", but that the company had failed to take "the intermediate step" of a suspension, for which the April 6 verbal counselling was no substitute. He wrote:

" . . . Progressive, corrective discipline has been spelled out as a guide to management over the last thirty years, to include oral warnings, writ-

1. We do not reach the issue posed by the union's appeal from the district court order refusing to order back pay from the date of discharge.

2. Were the issue of the company's misleading the arbitrator a critical one, summary judgment could not have issued in the face of such a conflict. We, like the district court, consider that the facts were before—if not effectively before—the arbitrator.

ten warnings, and at least one suspension before the discharge of a chronic offender will be sustained. A management which short cuts this procedure, or omits one of the steps, does so at its peril and must have a most compelling reason to justify a departure from the traditional procedural route.

In our case the Company neglected to suspend Gerasimetz before resort to discharge. There is no evidence in the record that Gerasimetz was ever given a disciplinary suspension in a final effort to persuade him to have his job tickets reflect only time spent on the job."

He concluded by saying that this long time employee "was never given the ultimate notice of suspension before the discharge action of June 16, 1972."

The district court, deeming the difficulty one of explanation rather than of decision, interpreted the arbitrator as saying that the missing essential step ("the intermediate step") was a second suspension in the period between April 6 and June 16, when "a new round" commenced, the first suspension, if the arbitrator had been aware of it, now being "stale and irrelevant". The court refrained from passing on this reasoning except to say that it was not "so irrational or faulty as to invalidate his award".

While we share the district court's respect for the arbitral process, I. U. E. v. Peerless Pressed Metal Corp., 489 F.2d 768 (1st Cir., 1973), cert. denied, 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973), and also its dissatisfaction with the effectiveness of the presentation of the company's case to the arbitrator, we cannot avoid feeling strongly that the arbitrator not only erred in his view of the facts, but that the sole articulated basis for his award was concededly in error. That is, we are convinced that there was a "gross mistake . . . made out by evidence", but for which, according to the arbitrator's rationale, a different result would have been reached.[3] Burchell v. Marsh, 17 How. (58 U.S.) 344, 350, 15 L.Ed. 96 (1854) (quoting Lord Thurlow). And, while the plaintiff can be criticized for its presentation, we cannot say there was withholding of the essential fact.

Were the arbitrator's language truly ambiguous, we would subscribe to the district court's interpretation of its meaning. But, on examination, we see no ambiguity. The passages we have quoted from the arbitrator's decision seem to us clearly to reflect his impression that there had never been a suspension. We find it too difficult to believe that the arbitrator would make such a sound and even eloquent statement of the need for industrial due process without explaining why a prior suspension was inadequate. More particularly, we cannot imagine him saying, without explanation, that a verbal chastisement on April 6 was no substitute for a suspension if he had known a suspension had terminated only fourteen days earlier.

We recognize the possibility that we may be interpreted as encouraging efforts to subvert the arbitral process. We therefore reemphasize that our holding today is only that where *the* "fact" underlying an arbitrator's decision is concededly a non-fact and where the parties cannot fairly be charged with the misapprehension, the award cannot stand. While we assume that the error was due to lack of emphasis in presentation and to the lapse of time before decision, and therefore in no way reflects upon the fairness of the arbitrator, we think it best if on remand the parties be free to proceed with a different arbitrator if they choose to do so. We say this having in mind the colloquy at argument concerning this procedure.

3. We do not mean to imply that, on resubmission to arbitration, there might not be a rationale, consistent with the facts, which could support a similar award. All we say is that an award of reinstatement based on the lack of any suspension cannot stand if in fact there had been a suspension.

In directing the parties to resubmit the issues to arbitration, we act within the scope of the Federal Arbitration Act, 9 U.S.C. § 10(e), which, we have held, applies to collective bargaining agreements. Local 205, United Electrical, Radio, and Machine Workers of America (UE) v. General Electric Co., 233 F.2d 85, 98–101 (1st Cir. 1956); *see also* Pietro Scalzitti Co. v. International Union of Eng., Local No. 150, 351 F.2d 576, 579–580 (7th Cir. 1965).

Reversed and remanded for an appropriate order directing the parties to resubmit the issues to arbitration. No costs.