**T.L.I., INC., Plaintiff,**

v.

**GENERAL TEAMSTERS LOCAL UNION NO. 261, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendant.**

**Civ. A. No. 80–1509.**

United States District Court,
W. D. Pennsylvania.

April 15, 1981.

Scott Zimmerman, C. Arthur Dimond, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Samuel J. Pasquarelli, Pittsburgh, Pa., for defendant.

OPINION

DIAMOND, District Judge.

Plaintiff, a party to a collective bargaining agreement between it and the defendant, brought this suit under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, to vacate an arbitrator's award. Cross motions for summary judgment presently are before the court. Defendant's motion will be granted and the plaintiff's denied.

BACKGROUND

Plaintiff, a company engaged in the business of leasing truck drivers as a contract labor service in the Western District of Pennsylvania, and defendant, a labor organization serving as the collective bargaining representative for the truck drivers employed by plaintiff, are parties to a three-year collective bargaining agreement which

became effective November 25, 1978. That contract contains a detailed grievance-arbitration procedure providing for final and binding arbitration of unresolved grievances. Under Article 6, the arbitrator is given authority to apply the provisions of the agreement and to render a decision on any grievance coming before him, but he is specifically denied authority "to amend or modify [the] Agreement or to establish new terms and conditions under . . ." it.

The grievance underlying this suit was filed by the defendant which claimed that the plaintiff had violated the contract by refusing to include a cost-of-living adjustment (COLA) in the wage increases that under the agreement were to become effective November 24, 1979, the first anniversary date of the contract.

Article 32, Section I, specifies the rates of pay for plaintiff's drivers effective November 25, 1978, and, in Notes 1 and 3 and 2 and 4 thereto, provides for rates of pay to become effective on the anniversary dates of November 24, 1979, and November 22, 1980, respectively. Notes 1 and 3 provide:

NOTE 1: Effective with the 24th day of November 1979, the hourly rate as reflected in "Column I" and effective/applicable prior to said date, shall be increased by the amount which has been negotiated/ratified and effective to the extent that it increased the rate which was effective prior to April 1, 1979; as specifically set forth in the document known as, or referred to as, the National Master Freight Agreement-Joint Council 40 Addendum.

NOTE 3: Effective with the 24th day of November 1979, the mileage rates as set forth in "Column I" shall be increased .5875¢ per mile in addition to the mileage increased amount as negotiated/ratified and effective to the extent that it increased the rate which was effective prior to April 1, 1979, as the mileage rate, as specifically set forth in the document known as, or referred to as, the National Master Freight Agreement-Joint Council 40 Addendum.

Notes 2 and 4 are identical to 1 and 3 respectively, but pertain to the second anniversary date, November 22, 1980.

When plaintiff implemented this Article by providing new wage rates to become effective on November 24, 1979, it only increased the rates by the amounts specified in the so-called "Joint Council 40 Addendum" and did not factor in the COLA provided for in "The National Master Freight Agreement" referred to in Notes 1 and 3. Defendant objected to this omission and filed a grievance which ultimately was submitted to arbitration. The grievance was sustained by the arbitrator in an Opinion and Award that stated in part as follows:

"I read the language of Article 32 to mean that *any* increases in hourly rate and/or mileage rate in the yet to be negotiated National Master Freight Agreement would become effective on November 24, 1980, (sic) regardless of the effective dates of such increases or whether they were stated increases, COLA or a combination thereof.

"In other words the November 24, 1979, hourly and mileage rates were to be increased by an amount equal to the National Master Freight rates then in effect less the rates which were effective prior to April 1, 1979."

The contract referred to in Notes 1–4 as "The National Master Freight Agreement-Joint Council 40 Addendum" and sometimes in the arbitrator's opinion and herein as the "National Master Freight Agreement" became effective on April 1, 1979, and had not been negotiated yet when the local agreement here in question became effective approximately four months earlier on November 25, 1978, although a predecessor agreement, the format of which was essentially the same as the April 1, 1979, agreement, was extant.

The foregoing facts are undisputed, as is the content of the collective bargaining agreement of November 25, 1978, and the arbitrator's Opinion and Award, which were attached as exhibits to the plaintiff's complaint, and the physical format and content

of the "National Master Freight Agreement," attached as an exhibit to plaintiff's cross motion for summary judgment.

The plaintiff contends that the Opinion and Award of the arbitrator should be vacated and set aside because the arbitrator acted beyond the authority granted to him by Article 6 of the local collective bargaining agreement and his award does not "draw its essence" from that contract. The defendant, of course, stoutly maintains to the contrary.

## APPLICABLE LAW

We need look no further for the law which governs our disposition of this matter than to *NF & M Corp. v. United Steelworkers of America*, 524 F.2d 756 (3rd Cir., 1975) where it was summarized by the Third Circuit. We quote relevant excerpts from pages 759–760.

Although the scope of judicial review of an arbitrator's award is severely limited, a court must ascertain whether the award "draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Local 103 of the International Union of Electrical, Radio and Machine Workers, AFL–CIO v. RCA Corp.*, 516 F.2d 1336 (3rd Cir. 1975). This Circuit has elaborated upon that language:

[A] labor arbitrator's award does "draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969).

. . . .

If the arbitrator's award has deviated from the plain meaning of a labor contract provision, it must find support in the contract itself or in prior practices demonstrating relaxation of the literal language. *H. K. Porter Co., Inc. v. United Saw, File and Steel Products Workers of America*, 333 F.2d 596 (3d Cir. 1964). An arbitrator may find compliance with the express terms of the grievance procedure in a labor contract excused by the parties' practical construction of it or "in light of the practice of the shop." *Yellow Cab Co. v. Democratic Union Organizing Committee, Local 777*, 398 F.2d 735, 737 (7th Cir. 1968), *cert. denied*, 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969).

. . . .

An arbitrator is not required to list his reasons for the award, nor should an ambiguity in his opinion be seized upon to support an inference that he exceeded his authority. *Enterprise, supra.* Further, a court is precluded from overturning an award for errors in assessing the credibility of witnesses, in the weight accorded their testimony, or in the determination of factual issues. *Amalgamated Butchers, Local 641 v. Capitol Packing Co.*, 413 F.2d 668 (10th Cir. 1969); *Dallas Typographical Union, No. 173 v. A. H. Belo Corp.*, 372 F.2d 577 (5th Cir. 1967); *International Brotherhood of Pulp, Sulphite and Paper Mill Workers, Local 874 v. St. Regis Paper Co.*, 362 F.2d 711 (5th Cir. 1966).

Nonetheless, if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated. *Electronics Corp. v. International Union of Electrical, Radio and Machine Workers, Local 272*, 492 F.2d 1255 (1st Cir. 1974); *H. K. Porter, Co., supra.*

. . . .

. . . Whether or not we agree with the arbitrator's application and interpretation of the contract is irrelevant. It is his

"construction which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of America v. Enterprise, Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

## DISCUSSION

The grievance presented to the arbitrator required him to construe Article 32, Section I, of the collective bargaining agreement. His first conclusion was that this Article was ambiguous. Since he does not state specifically his reasons for arriving at that conclusion, we are required to examine the record before him to determine if there is a rational basis for his conclusion. *NF & M v. United Steelworkers of America, supra*, p. 760.

In this regard, the "record" consists of the language of Article 32, Section I, Notes 1 and 3, and the format of the so-called "document" referred to therein. We note, for example, that the Notes refer to a "document known as, or referred to as, The National Master Freight Agreement—Joint Council 40 Addendum." It was important that this "document," be identified precisely, since the anniversary wage increases were to be found therein, yet, there was no document which bore the specific title referred to in Article 32. The relevant document is entitled "National Master Freight Agreement—*and*—Teamsters Joint Council No. 40 Freight Division Supplemental Agreement". (our emphasis) [1]

Physically, this is a single document which consists of approximately 171 consecutively numbered pages. The National Master Freight Agreement *portion* thereof encompasses pages 1 to 94 and the Teamsters Joint Council No. 40 Freight Division Supplemental Agreement *portion* thereof extends from page 96 to the end of the document. The National Master Freight Agreement portion of the document contains COLA provisions and no other wage rate schedules, while the Joint Council No. 40 Freight Division Supplemental Agreement, the so-called "Addendum," contains specific hourly and mileage wage rates.

Plaintiff contends that Notes 1 and 3 of Article 32, Section I, refer only to the "Addendum" and therefore could not include COLA. The defendant maintains that Notes 1 and 3 refer to the entire "document", which includes *both* The National Master Freight Agreement as well as the so-called "Addendum". The hyphenated punctuation and use of the word "document," both of which suggest one instrument, employed in Notes 1 and 3, create an ambiguity as to whether the reference is to The National Master Freight Agreement *and* Joint Council No. 40 Freight Division Supplemental Agreement as one instrument or whether the reference is to the Joint Council No. 40 portion alone as one document. The arbitrator, of course, found ambiguity, and we certainly cannot say that he ignored the plain meaning of the contract in finding that ambiguity, or that there was no rational basis therefor. See cases cited in *NF & M Corp., supra*, pp. 759–760.

Plaintiff cites *Monongahela Power Co. v. Local No. 2332, IBEW*, 566 F.2d 1196 (4th Cir. 1976), *Timken Co. v. Local Union No. 1123, United Steelworkers*, 482 F.2d 1012 (6th Cir. 1973), *Local 342, UAW v. T.R.W., Inc.*, 402 F.2d 727 (6th Cir. 1968), *Textile Workers Union v. American Thread Co.*, 291 F.2d 894 (4th Cir. 1961), and *Ziegler Coal Co. v. District 12, UMW*, 484 F.Supp. 445 (C.D.Ill.1980) as instances where arbitrators awards were vacated because the arbitrator ignored the plain meaning of the collective bargaining agreement and, in effect, dispensed "his own brand of industrial justice." Of course we do not quarrel with the well-established principle that an arbitrator may not ignore the plain meaning of the collective bargaining agreement and fashion his own equitable solution to the parties'

---

1. Exhibit 3 to affidavit of Melvin Smolik filed in support of plaintiff's Cross Motion for Summary Judgment.

dispute. Here, however, the meaning of the contract was not plain. The arbitrator was obliged, therefore, to look, in addition to that contract, to other indicia of the parties' intent. Accordingly, the plaintiff's authorities are of little aid.

Faced with the ambiguity, the arbitrator properly then considered other factors to ascertain the intent of the parties. There was testimony offered by the plaintiff through its witness, a Mr. Thomas, that he and a Mr. Cook, then president of Local 261, were the sole negotiators of the agreement which became effective on November 24, 1978. Mr. Thomas testified, inter alia, that the company had steadfastly refused to include any COLA in their wage package. There was also testimony, however, that he had told one of plaintiff's drivers that "Whatever Freight gets in April, you will get in November."[2] Further there was testimony of discussions by the negotiators concerning "catch-up." The arbitrator explained that in context this meant that inasmuch as the local agreement was providing mileage wage rates which were lower than those contained in the preexisting National Agreement that there would be "catch-up" provided for with regard to the rates per mile on the first and second anniversaries of the '78 agreement. In addition, there was testimony that in giving its approval to this local contract the Eastern Conference of the Teamsters, whose authority had to be obtained because of those initially lower wage rates contained in the local agreement, had indicated that it approved the "catch-up" provisions provided in the local agreement. And finally, the arbitrator took judicial notice that it was "common practice for parties to start off renewed agreements with a flat increase and then to crank in COLA at future times,"[3] he then concluded that it was the intent of the parties to include cost-of-living adjustments in the anniversary wage increases provided for in Article 32, Section I, Notes 1 and 3, because "catch-up was intended by the parties" and without it there could be no "catch-up."

The arbitrator carefully considered all of the foregoing as well as other relevant factors bearing on the parties' intent, and set forth his reasons in a logical manner for concluding that the parties intended in Article 32, Section I, Notes 1 and 3, to include the COLA provisions of The National Master Freight Agreement in the November, 1979, anniversary wage rates.[4]

Nevertheless, plaintiff argues that if the parties intended to *include* the COLA provided for in The National Master Freight Agreement, they simply could have referred to both "documents" specifically. However, the arbitrator noted that Mr. Thomas, plaintiff's negotiator, drafted the agreement[5] and concluded that if it was the plaintiff's intent to *exclude* COLA "the Company in drafting the proposed contract, should have clearly stated that only stated increases would be granted and that COLA increases would be excluded."[6] We find his reasoning not only legally sufficient, but also more persuasive than plaintiff's. In any event, we are "precluded from overturning an award for errors in assessing the credibility of witnesses, the weight accorded their testimony, or in the determination of factual issues." *NF & M Corp., supra*, at 759.

For the foregoing reasons, we find that the arbitrator's award does draw its essence from the collective bargaining agreement and is a rational interpretation of that contract, viewed in the light of its language, its context and the other indicia of the intention of the parties found by the arbitrator. *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128 (3rd Cir., 1969).

Accordingly, the award of the arbitrator will be sustained and an order will be en-

---

2. Arbitrator's Opinion and Award p. 5, Exhibit "B" to plaintiff's complaint.

3. Id. p. 7.

4. Id. pp. 6–10.

5. Id. p. 4.

6. Id. p. 9.

266

tered granting the defendant's motion for summary judgment and denying the plaintiff's cross motion therefor.