**SCOTT & WILLIAMS, INC.**

v.

**UNITED STEELWORKERS OF AMERICA, AFL–CIO.**

**No. C83–53–L.**

United States District Court, D. New Hampshire.

Oct. 28, 1983.

---

Edward E. Shumaker, Gallagher, Cantrell & Gartrell, Concord, N.H., for plaintiff.

## ORDER

LOUGHLIN, District Judge.

This action was instituted pursuant to 29 U.S.C. § 185 (section 301) on the plaintiff's petition to vacate a labor arbitration award and the defendant's counterclaim demanding enforcement of the award. The issues currently facing the court are the cross-motions of the parties for summary judgment. A statement of the relevant facts follows.

The plaintiff employer and defendant union entered into a collective bargaining agreement effective for the period July 1, 1979 until 12:01 a.m. on July 1, 1982 (agreement). This was one in a line of successive agreements between the parties which set forth the wages, hours, terms and conditions of employment of the defendant's members at the plaintiff's Laconia, New Hampshire facility. Among the terms of the agreement and the one of relevance here was a provision providing for life insurance for retirees. Reference to life insurance for retirees had appeared in successive agreements between the parties dating back to their agreement effective from 1970 through 1973.

On June 27, 1981 the plaintiff closed down all manufacturing operations and laid off virtually all its employees. It ceased to pay any further life insurance premiums as of June 30, 1981 suspending all payments it would have normally suspended with regard to laid off employees. Thus, the retirees no longer had life insurance coverage.

After the shut down, representatives of the plaintiff and defendant met on several occasions to discuss the winding up of the business. These meetings were informal and far ranging. The topics discussed included the grievances filed during May, 1981, concessions the plaintiff demanded of defendant to remain open and the elements of a potential plant closing agreement between the parties. The issue of continued life insurance was discussed by the parties but there are questions as to exactly when such discussions were held.

Grievances pending as of the shutdown were handled by the plaintiff's owner, R.G. Gignac and his foreman, Bob Dumas. They usually wrote their responses on the back of the grievance forms which the Union customarily used but they did not follow this procedure as to all grievances. The grievance procedure provided for in the agreement was not strictly followed after the shutdown.

On or about September 30, 1981 Gignac and Richard P. Wildes, the defendant's Sub-District Director for Northern New England met to discuss the issues surrounding the shutdown. At that time, Gignac informed Wildes that the plaintiff would not continue life insurance coverage. The defendant thereafter wrote to the plaintiff stating that its position was that the plaintiff was obligated to provide a paid up annuity in the amount of $4,000 for all retirees and those eligible to retire in the future. Wildes also dictated the language of a grievance on the subject of life insurance at that time. The grievance dated October 15, 1981 stated:

On September 30, 1981, the Company announced that they were closing the plant. Since that time they have refused to pay or provide vacation benefits (1982), refused to honor the sick leave and recall rights as provided for in 13.-13(D) and (E). Also pension benefits as provided for in Article XVI, the Vested Rights Certificate, Severance Pay, based upon vacation schedule and Life Insurance benefits for Retirees and any other monetary benefits or other benefits accruing to the employees laid off, active or retired.

This grievance report was delivered to the plaintiff within the time limits prescribed by the agreement.

Representatives of the parties met again on October 27, 1981 at which time the defendant submitted a list of proposals regarding a shutdown agreement. Among these was a proposal for paid up "whole life" insurance which the plaintiff termed as "out of the question". At that time the defendant's representative suggested that it would take the issue to arbitration.

On December 11, 1981, Wildes wrote to Gignac listing certain matters the defendant desired to submit to arbitration. Among these was the grievance regarding the payment of life insurance benefits for retirees. Gignac responded by stating the plaintiff was willing to discuss the issues the defendant wanted to arbitrate but made it clear that by such discussions the plaintiff was not waiving any challenge to the validity of the claims whether procedural or otherwise. The two met again on March 17, 1982 at which time Gignac reasserted his position that the plaintiff would not make the life insurance payments. This was the last time the parties discussed the life insurance question.

On March 18, 1982 Wildes wrote Gignac stating the defendant had submitted the life insurance question to arbitration. On April 23, 1982 the defendant filed its Demand for Arbitration with the American Arbitration Association. On September 14, 1982 a hearing was held before arbitrator, James M. Litton, Esq. The grievance was submitted to arbitration for resolution of the issue of its arbitrability and its merits. After a hearing and review of extensive post-hearing briefs filed by each party the arbiter issued a written Award in favor of the defendants as follows:

The Company violated Article 17.5(b) of the Agreement when it failed to continue group life insurance for retirees at a level of fifty percent (50%) of the amount of insurance in effect at the time

of retirement, but not to exceed four thousand dollars ($4,000).

The Company shall immediately make provisions to provide life insurance coverage at a· level of fifty percent (50%) of the amount of insurance in effect at the time of their retirement to retirees who were retired as of June 30, 1981.

The company shall pay to the beneficiaries of any retiree who has died, if any, and who would have been covered by retiree life insurance but for the Company's violation in this case an amount equal to the insurance proceeds they would have received had coverage been in place.

The plaintiff has refused to comply with the arbiter's award and initiated the present Petition to vacate the award asserting that it was a result of "plain mistake of fact and law" and because,

"The arbitrator exceeded his power and authority under the Agreement and law applicable to this case in that

a. The Union's Demand for Arbitration was not timely filed as required by the Agreement.

b. The Arbitrator's Award of "paid up annuities" was beyond his power in that the parties' agreement was for group term life insurance.

c. The Arbitrator erroneously shifted the burden of proof on the Union's grievance to the Employer.

d. Insofar as it awards life insurance benefits indefinitely for time periods after the July 1, 1982 termination of the collective bargaining agreement between the parties, the Arbitrator's Award is factually and legally erroneous and cannot stand under the law applicable to this case." (Petition, paragraph 10)

The action was originally commenced on January 12, 1983 in the Superior Court, County of Belknap of the State of New Hampshire. It was thereafter removed by the defendant to this court pursuant to the provisions of 28 U.S.C. § 1441.

 Summary judgment in an action of this nature is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Pignons [S.A. De Mecanique De Precision v. Polaroid Corp.]* 657 F.2d [482] at 486 [1981]; Fed.R.Civ.P. 56(c). A factual dispute is material if it "affects the outcome of the litigation," and genuine if manifested by "substantial" evidence "going beyond the allegations of the complaint." *Pignons*, 657 F.2d at 486; *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904,, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). In passing on a summary judgment motion, the court must view the record and draw inferences in the light most favorable to the opposing party. *Pignons*, 657 F.2d at 486; *Hahn*, 523 F.2d at 464.

*Astra Pharmaceutical Products, Inc. v. Beckman Industries, Inc.,* 718 F.2d 1201 (1st Cir.1983)

 Some initial questions face the court before a judgment on the merits of this matter may be made. Where the parties to a collective bargaining agreement agree to arbitrate any disputes which arise under the terms or provisions of their agreement, it is contrary to the labor policy of this country for a court to review the merits of a final award of the arbitrator,

Under well established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one. *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 [80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424] (1960). When the parties include an arbitration clause in their collective bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," id. at 597 [80 S.Ct. at 1361], a court is bound

to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous. *Id.*, at 598 [80 S.Ct. at 1361].

*W.R. Grace and Co. v. Rubber Workers Local 759,* —— U.S. ——, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). The scope of review in this court is therefore very limited.

Where parties to a collective bargaining agreement have provided for arbitration as the final and binding method for settling grievances the arbitration award is normally non-reviewable by a court. *See, General Drivers, Warehousemen & Helpers, Local 89 v. Riss & Co.,* 372 U.S. 517, 519, 83 S.Ct. 789 [791], 9 L.Ed.2d 918 (1963); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358 [1362], 4 L.Ed.2d 1424 (1960). See also *Republic Steelworkers v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The rule of non-reviewability serves the legislative policy that "[f]inal adjustment by a method agreed upon by the parties is ... the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). An arbitration award subject to judicial review would be neither final nor binding.

Exceptions to the rule of non-reviewability are, therefore, few and of a most limited nature. The Supreme Court has said that courts will not enforce an arbitration award which manifests the arbitrator's infidelity to his obligation to interpret and apply the collective bargaining agreement, *Enterprise Wheel, supra,* 363 U.S. at 597, 80 S.Ct. 1358 [at 1361]; but just because a court would interpret the contract differently from the arbitrator does not provide a basis for overruling him. *Id.* at 599, 80 S.Ct. 1358 [at 1362]. *See, e.g. Miller v. Spector Freight Systems,* 366 F.2d 92 (1st Cir.1966) (no review except for question of arbitrator's jurisdiction or improper conduct); *compare Electronics Corpo-*

ration of America v. International Union of Electrical Radio and Machine Workers, Local 272,* 492 F.2d 1255, 1257 (1st Cir.1974). Appellant cites a standard announced by the fifth circuit:

"[w]hether the award in this case was so unfounded in reason and fact, so unconnected with the wording and purpose of the collective bargaining agreement as to 'manifest an infidelity to the obligation of the arbitrator.'"

*Brotherhood of Railroad Trainmen v. Central Georgia Railway Co.,* 415 F.2d 403, 415 (5th Cir.1969), cert. denied, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970), quoting *United Steelworkers v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 597, 80 S.Ct. 1358 [at 1361]. *Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1048-49 (1st Cir.1977).

■ The plaintiff in challenging the arbitrator's award must show that the award was totally outside the intent or purpose of the collective bargaining agreement or, alternatively, was not a subject for arbitration in the first place. *Harris v. Chemical Leaman Tank Lines, Inc.,* 437 F.2d 167, 171 (5th Cir.1971).

■ Upon submission of an issue to the arbitrator, the arbiter is bound by the four corners of the agreement both in determining the scope of this authority and in making his or her award.

Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator.

*W.R. Grace v. Rubber Workers Local 759, supra.* The relevant arbitration provisions here provide:

### ARTICLE XV

### ARBITRATION

15.1 Any matter which may be referred to arbitration hereto pursuant to the Grievance Procedure Article above may

be so referred to arbitration by such party so notifying the other party hereto in writing ......

15.2 ...a decision by the arbitrator, if within the scope of the powers given him under the terms of this Agreement, shall be finally and conclusively, binding upon the parties hereto and upon any employee or employees affected thereby.

15.3 It is understood and agreed that matters involving changes in or additions to or elimination from the terms and provisions of this Agreement or involving any change in the Employer's wage rate schedule or structure, except as outlined in Article XI, shall not be subject to arbitration hereunder and that no arbitrators shall have the right to disregard any of the provisions hereof or to consider as binding upon either party any terms or provisions not expressed either in this Agreement or in a formal supplement hereto signed by the parties hereto.

The normal procedure for reaching arbitration is accordingly through the grievance procedure provided for by the agreement. These procedures give added definition to the scope of the arbitrator's authority here. The relevant grievance procedures provide:

## ARTICLE XIV

### GRIEVANCE PROCEDURE

14.1 Should there arise any grievance or dispute relative to the meaning or application of this Agreement to a serious effort shall be made to adjust such grievance or dispute as promptly as possible in accordance with the provisions of this Article. [sic]

14.2 ..

Step 1: The grievance shall be put in writing and dated and shall be presented to the foreman of the employee's department. The foreman's decision shall be made in writing within one (1) work day ...

Step 2: If a satisfactory decision is not made in Step 1 and an appeal is made within three (3) work days after the date of delivery of the foreman's decision in Step 1, it shall then be taken up with the Employer's authorized representative ...

Step 3: If a satisfactory decision is not made in Step 1, and an appeal is made within three (3) work days after the date of delivery of the decision of the Employer's authorized representative, it shall then be taken up by ... the Employer ... and ... the ... Union.

14.4 If a satisfactory decision is not reached in Step 3 then the grievance shall be referred to arbitration in accordance with the provisions of the arbitration Article of this Agreement, provided, however, that if said grievance is not referred to arbitration within ten (10) work days after the decision in Step 3 is given to the Union, there shall be no right thereafter to refer said grievance to arbitration and the decision of the Personnel Manager under Step 3 shall be final and conclusive and binding on the parties.

In his written award Arbitrator Litton listed the first issue presented him as whether or not the matter was arbitrable. This clearly called for his own interpretation of the contract and should not be reviewed here absent a showing that he acted with total disregard for the meaning and intent of the agreement. It has been held that the additional question of whether pre-arbitration remedies have been "exhausted" as raised by the plaintiff here is a question of procedure for the arbitrator not the court. *Proctor & Gamble Mfg. Co. v. Independent O & C Wkrs.*, 386 F.Supp. 213, 221 (D.C.Md.1974). See, *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 555–558, 84 S.Ct. 909, 917–19, 11 L.Ed.2d 898 (1964). The arbitrator, interpreting the contract as he saw proper determined that since the plaintiff's factory was no longer in operation, the grievance procedures called for could no longer be followed. This is a reasonable and intelligent conclusion drawn from the agreement and actions of the parties subject to the agreement. His decision on the arbitrability of the matter presented and the scope of his authority

under the agreement are surely drawn from the essence of the agreement itself. *United Steel Workers v. Enterprise Wheel & Car Corp., supra.* His award was therefore clearly within his authority as he interpreted the agreement.

■ The plaintiff further asserts that the arbitrator's award includes mistakes of fact and law and that his conclusions are not supported. Again the court fails to find this. As the arbitrator properly noted, the Supreme Court has held that the obligation to arbitrate a dispute can survive "contract terminations when the dispute was over an obligation arguably created by the expired agreement". *Nolde Brothers, Inc. v. Bakery Workers,* 430 U.S. 243, 252, 97 S.Ct. 1067, 1072, 51 L.Ed.2d 300 (1977). The matter before the arbitrator arose under the terms and provisions of the 1979 agreement between the parties and rightfully was considered arbitrable. There is no express or implied provision in the contract effectively negating this presumption of arbitrability, *see, Nolde Bros., Inc. v. Bakery Workers, supra,* at 255, 97 S.Ct. at 1074, and thus the arbitrator's conclusions are found to be supported.

■ The plaintiff's final argument contends that the arbitrator's award went beyond the scope of the agreement in finding that the life insurance benefits themselves survived the termination of the contract. The court does not agree with the plaintiff. The determination of whether the provisions of the agreement survive turns on the interpretation of the Collective Bargaining agreement and therefore is a question for the arbitrator and not the court. *UAW v. Robin Industries,* 561 F.Supp. 288, 299 (W.D.Mich.1983).

■ Having determined that the arbitrator properly approached the issues presented him and did so while confining himself to the "essence" of the agreement itself the court is compelled to refrain from reviewing the merits of the award. The court agrees that all of the arbitrator's findings and his reasoning processes are not without question.

But [plaintiff] has to show far more than that the case might have come out the other way, or that there were gaps in the arbitrator's reasoning. At a minimum, he must establish that the award is "unfounded in reason and fact", *Brotherhood of Railroad Trainmen v. Central Georgia Railway Co., supra,* 415 F.2d at 415, is based on reasoning "so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling", *Safeway Stores v. American Bakery and Confectionary Workers, Local 111,* 390 F.2d 79, 82 (5th Cir.1968), or is mistakenly based on a crucial assumption which is "concededly as nonfact", *Electronics Corporation of America v. International Union of Electrical, Radio and Machine Workers, Local 272, supra* 492 F.2d at 1257.

*Bettencourt v. Boston Edison Co., supra* at 1050. The plaintiff has failed to establish reasonable grounds to compel the court to review the merits of this award and the court finds no genuine issue nor any material fact requiring that the plaintiff be heard on the matter. Therefore viewing the record before the court in a light most favorable to the plaintiff, the court is compelled to find that the defendant is entitled to judgment as a matter of law. No grounds are alleged nor found to compel this court to review the merits of the arbitrator's award.

The defendant's motion for summary judgment is hereby granted upholding the validity of the arbitration award.