**CONLUX USA CORPORATION,**
**Plaintiff,**

v.

**DIXIE–NARCO, INC. and Maytag**
**Corporation, Defendants.**

No. 1:92CV0576.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 25, 1996.

Steven J. Miller, Robert A. Goodman, Goodman, Weiss, Miller & Goldfarb, Cleveland, OH, Stuart Lubitz, Spensley, Horn, Jubas & Lubitz, Los Angeles, CA, Chauncey H. Browning, Charleston, WV, David W. Victor, Richard H. Zaitlen, Alan S. Raynes, Loeb & Loeb, Los Angeles, CA, for Conlux USA Corporation.

Sylvia A. Petrosky, Ray L. Weber, Renner, Kenner, Greive, Bobak, Taylor & Weber, Akron, OH, Elroy H. Wolff, Kurt H. Jacobs, Sidley & Austin, Washington, DC, for Dixie–Narco, Inc.

Ray L. Weber, Renner, Kenner, Greive, Babak, Taylor & Weber, Akron, OH, Elroy H. Wolff, Kurt H. Jacobs, Sidley & Austin, Washington, DC, for Maytag Corporation.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Conlux USA brought this action for patent infringement against Dixie–Narco, Inc. and its parent company, Maytag Corporation. The matter was referred to arbitration with the consent of the parties. Conlux has now filed a motion to vacate the arbitrator's award pursuant to 9 U.S.C. § 10. For the reasons which are stated below, Conlux's motion is denied, and the arbitrator's award is confirmed.

### I.

#### A. Factual Background

The patent at issue here is for a bill discrimination and accumulation device for vending machines. While such devices were in use before 1980, they were not well-suited for use in vending machines. In 1982, Coca–Cola, Inc. contracted with Conlux's predecessor, Nippon Conlux, to develop a device which could be installed in existing vending machines.

Three employees of Nippon Conlux succeeded in producing a compact bill discrimination and accumulation device. The device transports a bill along an L-shaped path. The short, or horizontal, leg of the L contains sensors for determining whether the bill is genuine and will be accepted. If the bill is accepted, it travels to the long, or vertical, leg of the L, where the accepted bills are accumulated, or stored.

Nippon Conlux applied for a patent for this device in Japan in 1983. In 1984, it applied for a U.S. patent on the same device. The initial application was denied pursuant to 35 U.S.C. §§ 102 and 103 due to the existence of prior art. Nippon Conlux then amended its claims, and eventually was issued patent number 4,678,072 (the '072 patent) on July 7, 1987. Nippon Conlux subsequently assigned the '072 application to Conlux, the plaintiff in this action.

Defendant Dixie–Narco is a wholly owned subsidiary of defendant Maytag Corporation. It manufacturers a dollar bill validator and accumulator which is similar to Conlux's.

#### B. Procedural Background

Conlux sued Dixie–Narco for patent infringement and antitrust violations in the Northern District of West Virginia. Dixie–Narco counterclaimed for antitrust violations. On Dixie–Narco's motion, the action was transferred to the Northern District of Ohio, pursuant to 28 U.S.C. § 1404(a).

On June 9, 1993, pursuant to the parties' stipulation, this Court dismissed Conlux's antitrust claims and Dixie–Narco's counterclaim. The parties also agreed to submit Conlux's remaining patent infringement claim to binding arbitration. The parties agreed to the selection of Robert B. Jones of Fitch, Even, Tabin & Flannery as the arbitrator.

The arbitrator held a hearing from November 7–14, 1994. The parties then filed post-hearing briefs. On March 2, 1995, the arbitrator orally rendered a decision on liability. The arbitrator found that claims 2, 3, and 4 of the '072 patent were invalid as obvious under 35 U.S.C. § 103. Claims 1 and 7 were found to be valid.[1] The arbitrator further found that Dixie–Narco had infringed on claim 1 under the doctrine of equivalents, and had literally infringed on claim 7.

Rather than finding Dixie–Narco liable, however, the arbitrator also found that Nippon Conlux had engaged in inequitable conduct. An applicant for a patent may be found guilty of inequitable conduct if it withholds material information from the patent office with the intent to affect the allowance of the claims. *LaBounty Mfg., Inc. v. United States Int'l Trade Commission*, 958 F.2d 1066, 1070 (Fed.Cir.1992). If the applicant is guilty of inequitable conduct, then the patent is unenforceable. *Id.* To support a finding of inequitable conduct, there must be clear and convincing proof of (1) prior art or infor-

---

1. Conlux withdrew claims 5 and 6 from the proceeding.

mation that is material; (2) knowledge chargeable to the applicant of that material art or information; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the examiner. *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed.Cir.1987).

Here, the arbitrator found that Nippon Conlux had failed to disclose the existence of Japanese patent application number 57–132291 (the '291 patent), which anticipated many, if not all, of the features of the '072 patent. He also found that whoever had prepared the invention disclosure for the '072 patent misdescribed the two pairs of link levers in the '072 patent as being a single pair. In doing so, that person copied the exact language from the '291 publication; the device described in the '291 patent has only a single pair of link levers. The arbitrator concluded that the act of copying proved that the preparer had deliberately withheld information, and he inferred from that act an intent to deceive the examiner.

The arbitrator then requested briefing on whether Conlux could be granted any relief despite a finding of inequitable conduct. In addition to briefing that issue, Conlux also addressed the arbitrator's findings regarding intent to deceive. Conlux argued that the word "pair" in the patent application was ambiguous, and, in the context of the vending machine industry, a "pair" could mean either one set of link levers or two sets of link levers. The arbitrator construed this as a motion for reconsideration.

Upon reconsideration, the arbitrator conceded that Conlux's argument regarding link levers cast doubt on his conclusion that the use of the singular "pair" was evidence of copying. However, upon a further review of the '072 and '291 disclosures, the arbitrator found further evidence of copying. Specifically, he found that the '072 disclosure misdescribed the device as having a single cam operating on the link levers; in actuality, the device has two cams. The '291 device, however, does have a single cam and is so described in the invention disclosure. The arbitrator again concluded that this demonstrated copying and intent to deceive.

Conlux now argues that the apparent misdescription of the device in the '072 disclosure as having one cam was actually a mistranslation of the '072 disclosure from the original Japanese. Apparently, in Japanese, the same characters are used for the singular "cam" and the plural "cams." The proper meaning must be derived from the context. In this case, Conlux argues that the context was provided by a drawing, which showed two cams. However, both the translation submitted by Conlux and the translation submitted by Dixie–Narco translated these characters as the singular "cam." The arbitrator obviously relied on the translations submitted. It was only after the arbitrator made his final decision that Conlux reviewed the translations more carefully and discovered the alleged error.

Having determined that Conlux was guilty of inequitable conduct, the arbitrator concluded that such a finding precluded recovery by Conlux on the claim for patent infringement.[2] The arbitrator then found for Dixie–Narco. The arbitrator also concluded that an award of attorney's fees was inappropriate. The arbitrator informed the parties of his decision in a telephone conference on July 19, 1995, and submitted a written award to this Court, which was filed on November 7, 1995.

Conlux has now moved to vacate the arbitrator's decision, asserting four grounds: 1) the arbitrator's decision is based on a clear mistake of fact; 2) the arbitrator prevented Conlux from responding to the arbitrator's basis for a finding of inequitable conduct; 3) the arbitrator's decision constitutes a manifest disregard for the law; and 4) the arbitrator exceeded his powers in rendering a decision based upon matters not raised by the parties.

## II.

Arbitration is a highly favored means of dispute resolution. *International Bhd. of Electrical Workers, Local 429 v. Toshiba America, Inc.*, 879 F.2d 208, 209 (6th Cir.1989). As a result, arbitrator's decisions

---

**2.** The parties agree that this conclusion is unquestionably correct.

are entitled to great deference and are subject to a very limited review. *National Post Office Mailhandlers, Watchmen, Messengers and Group Leaders Division, Laborers Int'l Union of North America v. United States Postal Service,* 751 F.2d 834, 840 (6th Cir. 1985). In general, an arbitration award may only be vacated if one of the grounds listed in 9 U.S.C. § 10 exists. *Barbier v. Shearson Lehman Hutton Inc.,* 948 F.2d 117, 122 (2nd Cir.1991). Title 9 U.S.C. § 10(a) provides in pertinent part:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) Where the award was procured by corruption, fraud, or undue means.
>
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of the party have been prejudiced.
>
> (4) Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

In addition, an arbitration award may be set aside if the arbitrator's decision results from a "manifest disregard of the law." *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953), *overruled on other grounds, Rodriguez De Quijas v. Shearson/American Exp., Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

### A. Mistake of Fact

■ Conlux first argues that the arbitrator's decision regarding inequitable conduct should be vacated because the arbitrator relied on the allegedly erroneous translation of the '072 disclosure in finding an intent to deceive. While this Court is not to revisit the arbitrator's factual determinations,

where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award, it can fairly be said that the arbitrator 'exceeded [his] powers, or so imperfectly executed them' that vacation may be proper.

*National Post Office,* 751 F.2d at 843 (citations omitted) (alteration of internal quotation in original). In other words, " 'where *the* fact underlying an arbitrator's decision is concededly a non-fact and where the parties cannot fairly be charged with the misapprehension, the award cannot stand.' ". *Id.* (quoting *Electronics Corp. of America v. International Union of Elec., Radio and Machine Workers, AFL–CIO Local 272,* 492 F.2d 1255, 1257 (1st Cir.1974)).

In this case, Conlux claims that the arbitrator strongly relied on the alleged mistranslation in making the finding of inequitable conduct. This argument fails for several reasons, however. First, the test articulated by the Sixth Circuit in *National Post Office* requires that the record that was before the arbitrator demonstrate an unambiguous and undisputed mistake. *Id.* For example, in *National Post Office,* the arbitrator erred as to the date of an employee's guilty plea, even though the record was clear as to the date. *Id.* Here, the record that was before the arbitrator does not reveal any error of fact, let alone one which is unambiguous and undisputed; rather, the error only appears when the exhibits and pleadings which Conlux filed with this Court are considered. The very fact that Conlux felt it necessary to submit numerous declarations and exhibits documenting the alleged error proves that the error was not undisputed and unambiguous in the record before the arbitrator.

In addition, the use of the word "cam" in the invention disclosure is not the sole basis for the arbitrator's finding of inequitable conduct. Conlux points to the telephone conference of July 19, 1995, in which the arbitrator stated that the evidence submitted by Conlux regarding the use of the word "pair" in describing the link levers was "sufficient to cast doubt on [his] previous finding." However,

later in the same conference, the arbitrator stated that "even if the misdescription of the link levers was ambiguous as plaintiff argues, as to which I'm still not persuaded, the misdescription of the cams was and is unambiguous." Similarly, in the written award, which is before this Court for review, the arbitrator relied on the misdescriptions of both the cam and the link levers. Thus, the arbitrator relied on the misdescription of the link levers as well as on the misdescription of the cams, and the misdescription of the cams is not the "sole fact" underlying the arbitrator's award. Accordingly, even if the misdescription of the cams were undisputedly a "non-fact," the award would still stand.

Finally, Conlux cannot claim relief from an error for which it can be fairly charged. *See National Post Office*, 751 F.2d at 843. Here, not only did Conlux fail to object to the translation submitted by Dixie–Narco, but its own translation also contains the same alleged error. In response, Conlux argues that it should not be responsible for every error in the translation of the documents and points to *Electronics Corp.*, in which the party challenging the arbitration award had done a poor job of adducing the crucial evidence. *Electronics Corp.*, 492 F.2d at 1256. However, *Electronics Corp.* is distinguishable. In that case, the evidence was in the record, but not properly emphasized. *Id.* at 1256–57. Here, the evidence Conlux relies on is not in the record at all. In addition, the '072 disclosure was an important document in the arbitration; it was certainly incumbent upon Conlux to ensure that it was properly translated. This is especially true in the context of a patent arbitration, where the precise meaning of each word in a claim is of crucial importance.

In summary, the record that was before the arbitrator does not reveal an undisputed or unambiguous mistake of fact upon which the arbitrator's award rested. Therefore, the alleged mistranslation of the '072 disclosure does not provide a ground for vacating the arbitrator's award.

---

**3.** It is of no consequence that Conlux urges this Court to vacate the award so that the arbitrator can consider new evidence, rather than simply vacating the award because of the existence of new evidence. In either case, Conlux wants the cause remanded for consideration of new evidence, and styling the argument as an "opportunity to respond" is merely an elegant way of avoiding the rule on new evidence.

## B. Opportunity to Respond

■ Conlux's second argument is that the award should be vacated because Conlux never had the opportunity to respond to the basis for the arbitrator's award. In other words, Conlux claims that the arbitrator should have allowed it to present evidence regarding the alleged mistranslation. Title 9 U.S.C. § 10(a)(3) does provide that an arbitration award may be vacated if the arbitrator failed to hear pertinent and material evidence.

■ However, the arbitrator in this case did hear all the evidence proffered before he made his ruling. The problem is that some of the evidence may have been erroneously translated. In reality, Conlux's complaint is that the arbitrator failed to allow it to present newly discovered evidence, i.e., the modified translation.[3] Of course, an arbitrator is not required to hear newly discovered evidence, and such evidence is not a basis for vacating an arbitration award, especially where the evidence should have been discovered in the exercise of due diligence. *Shearson Hayden Stone, Inc., v. Liang*, 653 F.2d 310, 313 (7th Cir.1981). Otherwise, arbitration awards could never be final. In this case, Conlux admits it had an "accurate" translation in its possession at the time of the arbitration. It should have discovered the error through the exercise of due diligence.

■ Conlux also claims that the arbitrator's refusal to let it respond deprived it of a "fundamentally fair hearing." *National Post Office*, 751 F.2d at 841. This Court disagrees. The arbitrator held a full hearing, took all the evidence proffered, and allowed the parties to file post-hearing briefs. The arbitrator then entertained supplemental briefing on the issue of inequitable conduct, and even generously allowed Conlux to make a motion for reconsideration, which he granted in part. Such a procedure is fundamentally fair. The arbitrator's subsequent refus-

al to consider new evidence does not render this procedure unfair, especially since the arbitrator is under no obligation to consider such evidence. Therefore, the arbitrator's failure to allow Conlux to present new evidence is not a ground for vacation of the award.

## C. Manifest Disregard of the Law

■■ Next, Conlux argues that the arbitrator manifestly disregarded the law in concluding that Conlux was guilty of inequitable conduct. More specifically, Conlux claims that the arbitrator lacked clear and convincing evidence to support his conclusion that Conlux intended to deceive the patent office. The question for this Court is not whether it agrees with the arbitrator's conclusion; rather, the issue is whether that conclusion is in manifest disregard of the law.

A review of the arbitrator's award shows that the arbitrator did not disregard the law. As Conlux concedes, the arbitrator correctly stated the governing law, which is that clear and convincing evidence of an intent to deceive is required to support a finding of inequitable conduct. In addition, the arbitrator carefully delineated his reasons for concluding that Conlux had intended to deceive the patent office.

■■ In response, Conlux claims that the reasons given by the arbitrator are insufficient as a matter of law. First, Conlux argues that the arbitrator based his finding solely on the fact that Conlux knew the art it was withholding was material. As Conlux points out, proof of materiality does not suffice to prove intent. Braun, Inc. v. Dynamics Corp. of America, 975 F.2d 815, 822 (Fed. Cir.1992). However, Conlux misapprehends the arbitrator's decision. The arbitrator discusses the materiality of the prior art at length because the greater the showing of materiality, the less evidence of intent is required to support a finding of inequitable conduct. Halliburton Co. v. Schlumberger Technology Corp., 925 F.2d 1435, 1439 (Fed. Cir.1991). In this case, the arbitrator found that the undisclosed art was highly material and that Conlux was aware of its materiality. The arbitrator then concluded that Conlux's statement to the patent office that it was

aware of no prior art which would anticipate or make obvious its claims was false, and that Conlux knew that the statement was false. The arbitrator then inferred an intent to deceive from the knowingly false statement. See Hewlett–Packard Co. v. Bausch & Lomb, Inc., 882 F.2d 1556, 1562 (Fed.Cir.1989) (intent may be inferred), cert. denied, 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990). In addition, the arbitrator inferred an intent to deceive from Conlux's knowledge of the materiality of the prior art, which is different from the mere fact of materiality. While this Court may not have reached the same conclusion, this Court cannot conclude that the arbitrator's finding of intent is in manifest disregard of the law.

■■ Second, Conlux argues that the arbitrator disregarded the only clear evidence of intent, which was one of the inventors' statements that he did not consider the prior art material. However, the arbitrator did consider this evidence, and stated that he did not find this testimony credible. The arbitrator, as trier of fact, is entitled to disregard testimony that he does not find credible, and this Court is not empowered to revisit those credibility determinations.

## D. Exceeding Powers

Conlux's final argument is that the arbitrator exceeded his powers by basing his decision on grounds not raised by the parties. "Although arbitrators enjoy a broad grant of authority to fashion remedies . . ., arbitrators are restricted to those issues submitted." Totem Marine Tug & Barge v. North American Towing, 607 F.2d 649, 651 (5th Cir.1979) (citation omitted).

■■ Here, Conlux argues that neither party raised the use of the word "cam," and so the arbitrator lacked the power to consider it. This argument borders on the absurd. Conlux submitted the '072 disclosure into evidence; it can hardly be heard to complain now that the arbitrator considered it as such. Totem Marine is inapposite here. In Totem Marine, the arbitration panel awarded damages for a claim which was not before the arbitration panel. Id. In this case, the issue of inequitable conduct was before the arbitra-

tor and a finding of inequitable conduct was within his powers. The mere fact that the arbitrator relied on evidence in the record that was different from that which Dixie–Narco urged on him does not mean that he exceeded his powers.

### III.

For the foregoing reasons, this Court concludes that there is no basis for vacating the arbitrator's award dealing with inequitable conduct. Therefore, Conlux's motion to vacate in part the arbitrator's award is denied, and the arbitrator's award is confirmed.

This order is final and appealable.

IT IS SO ORDERED.